Argued July 16, affirmed September 23, 1970

EPTON, *Respondent, v.* AMERICAN MAIL
LINE, LTD., *Appellant.*
474 P2d 516

*William F. White,* Portland, argued the cause for appellant. With him on the briefs were White, Sutherland & Gilbertson, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE and TONGUE, Justices.

TONGUE, J.

This is an action for personal injuries by a longshoreman against a shipowner based upon the allegation that the merchant ship "Japan Mail" was unseaworthy in that the cargo then being loaded by it at Longview, Washington, consisting of bales of wood pulp, was packaged in faulty and improper containers.

The trial court, sitting without a jury, entered a judgment for plaintiff in the sum of $26,454.50. Defendant appeals, contending that the vessel was not rendered unseaworthy because of defects in the packaging of the wood pulp and that, in any event, the amount of the judgment was excessive.[1]

The bales of ground and compressed wood pulp, each weighing at least 480 pounds, were rectangular in shape. Each bale was wrapped in a single sheet of

---

[1] Defendant also contends that there was no evidence to support plaintiff's further allegation that the cargo was improperly stowed. Because we find that the vessel was "unseaworthy" it is not necessary to decide that further contention.

paper the thickness of a manila envelope and was bound by two strands of wire. The bales were stowed in the ship's hold in tiers of four, with two "stickers" of 2″ x 4″ lumber about two feet long between the bottom two bales and the top two bales (which were placed by a fork lift on top of the bottom two bales).

Plaintiff, while working in the hold, was struck by two bales which fell from the top of such a stack of bales of wood pulp. According to the testimony, the ship had a slight list at that time and weight of the top two bales, in pressing down upon one of the "stickers," caused the paper wrapping on one of the bales to tear and "tore the whole corner right out of the bale." Wood pulp was then forced out "in big chunks." This, in turn, caused the "sticker" to "come out." Some of the bales of pulp then toppled and fell.

Defendant contends that it was improper for the trial court to hold "that the 'Japan Mail' was unseaworthy because of an inherent vice of a shipper's cargo;" that "once such a step is taken, the idea of a shipowner being responsible only for his ship and its gear goes out the window, and with it his due process of law," leaving the concept of "unseaworthiness" as a "hollow word." In support of this contention defendant cites *Carabellese v. Naviera Aznar*, S.A. (2d Cir 1960) 285 F2d 355 and *Bell v. Nihonkai Kisen*, K. K. (D Or 1962) 204 F Supp 230.

Plaintiff, in turn, would characterize such a contention as a "threnody" addressed to the "wrong forum" and says that this case is controlled by the more recent decision of the Supreme Court of the United States in *Gutierrez v. Waterman Steamship Corp.*, 373 US 206, 10 L ed 2d 297, 83 S Ct 1185 (1963).

■ Since this cause of action arose upon navigable

waters of the United States, questions of substantive law are not controlled by the law of the state of the forum or the place of the injury, but are controlled by general maritime law, in accordance with decisions by the Supreme Court of the United States. *Kermarec v. Compagnie Generale Transatlantique*, 358 US 625, 628, 79 S Ct 406, 3 L ed 2d 550 (1959).

In *Gutierrez v. Waterman Steamship Corp.*, *supra*, it was held by that court, as a matter of maritime law, that the use of defective cargo containers constitutes unseaworthiness, under the facts of that case. In that case a longshoreman working on the dock slipped on some loose beans which had spilled from broken and defective bags during the unloading of a vessel. The trial court found unseaworthiness in the defective condition of the bagging. This finding was set aside by the Court of Appeals which held, among other things, that the shipowner was not responsible for the cargo containers. The Supreme Court reinstated the judgment of the district court. In so holding, it stated (at p 212):

> "Two questions are raised * * *: (1) *whether the use of defective cargo containers constitutes unseaworthiness*, and (2) whether the shipowner's warranty of seaworthiness extends to longshoremen on the pier who are unloading the ship's cargo." (Emphasis added)

Upon the first question, the Supreme Court held (at p 213-14) after reviewing prior decisions:

> "These cases all reveal a proper application of the seaworthiness doctrine, which is in essence the things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, *or the cargo containers*, must be reasonably fit for the purpose for which they are to be used. * * * *A*

*ship that leaks is unseaworthy; so is a cargo container that leaks. When the shipowner accepts cargo in a faulty container or allows the container to become faulty, he assumes the responsibility for injury that this may cause to seamen or their substitutes on or about the ship."* (Emphasis added)

The Supreme Court also answered the second question affirmatively, holding (at p 215) :

"[T]he duty to provide a seaworthy ship and gear, including cargo containers, applies to longshoremen unloading the ship whether they are standing aboard ship or on the pier."

Defendant would have this court hold that what was held by the Supreme Court of the United States in *Gutierrez* is mere dicta as applied to the facts of this case for the reason that *Gutierrez* involved the *unloading* of a poorly packaged and faulty cargo which had previously been stowed aboard the ship and may then have become defective through improper stowage or care, whereas this case involves the *loading* of a defective cargo.

Essentially the same contention was considered and rejected in *Noble v. Lehigh Valley Railroad Co.* (2d Cir 1968), 388 F2d 532. In that case the court of appeals, while distinguishing decisions in other cited cases, observed (at p 533) that *Gutierrez* is a "harder nut to crack" and held (at p 534) that the decision in *Gutierrez* "leads to (the) conclusion" that "no distinction is presently justified between loading and unloading" and that in such a case the shipowner is liable for unseaworthiness "if the cargo container was not reasonably fit for its purpose."[2]

---

[2] It should also be noted that in *Noble* the court of appeals, at least by implication, either overruled or limited the application

The same conclusion from *Gutierrez* is also supported by *United States Lines Co. v. King* (4th Cir 1966), 363 F2d 658, 661, and *Serrano v. United States Lines Co.* (SDNY 1965), 238 F Supp 383, at 387. See also 9 *Villanova* L Rev 422, at 431-34. No cases or other authorities to the contrary since *Gutierrez* have been cited by defendant.

■ Accordingly, this court is of the opinion that it must hold that when a shipowner accepts cargo on board ship in a faulty or defective container, as in this case, it assumes responsibility for injury that this may cause to longshoremen engaged in the loading of such cargo.

Defendant's further contention that the judgment in this case should be set aside by this court as excessive must also be rejected, even assuming (as defendant must assume in making such a contention) that for such purposes this case is also controlled by federal maritime law, rather than by Article VII, § 3, of the Oregon Constitution. See *Hust v. Moore-McCormack Lines,* 180 Or 409, 415-36, 177 P2d 429 (1947).

■ While the truthfulness of plaintiff, as a witness, may have been seriously impeached, there was ample evidence, including medical testimony, to support the finding of the trial judge that plaintiff sustained a substantial injury to his lumbar and dorsal spine, for which he was hospitalized several times. In any event, this court, which must assume the truth of such evidence for the purposes of this appeal, cannot properly

of its previous decision in Carabellese v. Naviera Aznar (2d Cir 1960), 285 F2d 355, one of the two cases relied on by defendant in this case. In the other case, Bell v. Nihonkai Kisen, K. K. (D Or 1962), 204 F Supp 230, a log broke while suspended by the ship's gear, so that the defect involved was that of the cargo itself, rather than a defective container.

say that the judgment was " * * * so inordinately high as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate," considering all of the facts and circumstances of this case, to apply the test approved this day by this court for application in actions under the Jones Act. *See McMahan v. States Steamship Co.*, 91 Adv Sh 371, 474 P2d 515 (decided September 23, 1970). See also *Grunenthal v. Long Island Railroad Co.*, 393 US 156, 159, 21 L ed 2d 309, 89 S Ct 331 (1968).

Affirmed.