Argued and submitted August 22,
reversed and remanded September 29, 1980

SCHWALB,
*Appellant,*
*v.*
HENDY INTERNATIONAL CO.,
*Respondent.*

(No. A7806-09712, CA 16677)

617 P2d 290

William B. Aitchison, Portland, argued the cause for appellant. With him on the briefs were Jolles, Sokol & Bernstein, P.C., and Jack Ofelt, Jr., and Franklin, Bennett, Ofelt and Martin, Portland.

Frederick E. Cann, Portland, argued the cause for respondent. With him on the brief was Williams, Stark, Hifield & Norville, P.C., Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Plaintiff brought this action to recover damages for loss of consortium from the owner of a vessel on which plaintiff's husband was a seaman and on which he was injured while the vessel was in Oregon territorial waters. Plaintiff alleged, in separate counts, that her husband's injury resulted from the vessel's unseaworthiness and from the negligence of defendant. The trial court sustained defendant's demurrer to the complaint and entered judgment for defendant. Plaintiff appeals.

The only question is whether general maritime law provides the wife of a seaman injured within navigable territorial waters a cause of action for loss of consortium. Plaintiff contends that the United States Supreme Court's decision in *American Export Lines, Inc. v. Alvez,* 446 US 274, 100 S Ct 1673, 64 L Ed 2d 284 (1980) (which was decided after the trial court's judgment was entered and after plaintiff filed her opening brief here) is controlling[1] and requires that the question before us be answered affirmatively. Defendant argues that *Alvez* is distinguishable. Because we agree with plaintiff, we reverse and remand.

■ The question presented is a federal one, US Const, Art III, Sec 2, and we are bound by any applicable decisions of the United States Supreme Court. *See Moragne v. States Marine Lines,*398 US 375, 378, n 1, 90 S Ct 1772, 26 L Ed 2d 339 (1970); *Epton v. American Mail Line,*256 Or 532, 534-35, 474 P2d 516 (1970). The issue, and analogous ones, have been before the Supreme Court and other federal courts in several cases decided in recent years.

In *Igneri v. Cie. de Transports Oceaniques,* 323 F2d 257 (2nd Cir 1963), *cert den* 376 US 949 (1964), the wife of a longshoreman who was injured aboard the

---

[1] Although this case was decided in the trial court on the basis of what might be argued as the then existing law, and that the law was changed by *Alvez* pending appeal to this court, no one contends that the rule of "the law of the case" precludes our deciding the case on the basis of the Supreme Court's decision in *Alvez.*

defendant's vessel in territorial waters sought damages for loss of consortium, and alleged that her husband's injury was caused by the defendant's negligence and the unseaworthiness of the ship. The United States Court of Appeals held that the general maritime law did not provide the plaintiff with a cause of action for loss of consortium. The court based its conclusion on the absence of a then-existing generally recognized common law right of *wives* to recover for loss of consortium, and, by analogy, on federal statutes relating to seamen and longshoremen under which damages for loss of consortium were not then recoverable.

In *Moragne v. States Marine Lines, supra,* the widow of a longshoreman who was killed while working on a vessel in Florida territorial waters sought damages for wrongful death from the owner of the vessel. The Supreme Court had held in *The Harrisburg,* 119 US 199, 7 S Ct 140, 3 L Ed 358 (1886), that there was no cause of action for wrongful death under general maritime law. In 1920, Congress enacted the Death on the High Seas Act (46 USCA §§ 761 *et seq.*) (DOHSA), which conferred a right of action for wrongful death on the survivors of persons killed by "wrongful act, neglect, or default occurring" outside the three mile territorial limit. In *Moragne,* the Supreme Court overruled *The Harrisburg,* and held "that an action does lie under general maritime law for death caused by violation of maritime duties in territorial waters." 398 US at 409. The court rejected the shipowner's argument that the limitation of the remedy under DOHSA to deaths occurring on the high seas manifested a congressional intent to preclude a nonstatutory federal remedy for deaths occurring inside the three mile limit.

One of the issues in *Sea-Land Services, Inc. v. Gaudet,* 414 US 573, 94 S Ct 806, 39 L Ed 2d 9 (1974), was whether the widow of a longshoreman who died as a result of injuries sustained on a vessel in Louisiana territorial waters could recover damages for "loss of society" as part of the general maritime law wrongful

death remedy enunciated in *Moragne.*[2] By a 5-4 majority, the Supreme Court held that she could, stating:

> "We recognize, of course, that our decision permits recovery of damages not generally available under the Death on the High Seas Act. Traditionally, however, 'Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law,' *Fitzgerald v United States Lines Co.,* 374 U.S. 16, 20, [10 L Ed 2d 720, 83 S Ct 1646] (1963). The scope and content of the general maritime remedy for wrongful death established in Moragne is no exception. After combing the legislative history of the Death on the High Seas Act, we concluded in *Moragne* that Congress expressed 'no intention * * * of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law.' 398 U.S., at 400, [26 L Ed 2d 339.] Nothing in the legislative history of the Act suggests that Congress intended the Act's statutory measure of damages to pre-empt any additional elements of damage for a maritime wrongful-death remedy which this Court might deem "appropriate to effectuate the policies of general maritime law." * * * 414 US at 588, n 22.

The Court also noted that a clear majority of states permitted damages for loss of society in wrongful death actions, which was not the case at the time *Igneri* was decided.

Justice Powell's dissent in *Gaudet,* in which three other members of the Court concurred, took issue with the majority's sanctioning of damages for losses which would not be compensable under DOHSA or the Jones Act (46 USCA § 688).

---

[2] The parties agree that "loss of society," as used in *Gaudet* and other Supreme Court decisions, includes loss of consortium. We also agree. In *Gaudet,* "society" was defined as embracing

> "* * * a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection. * * *" (Footnote omitted.) 414 US at 585.

The terms "loss of society" and "loss of consortium" were used interchangeably by the Supreme Court plurality in *American Export Lines, Inc. v. Alvez, supra.*

In the aftermath of *Gaudet,* a number of state and lower federal courts reached differing conclusions on whether *Gaudet* implicitly nullified the holding in *Igneri,* or, conversely, applied only to wrongful death cases and did not affect the availability of loss of consortium damages for the spouses of persons who were injured nonfatally in territorial waters. Most of the courts which considered that question concluded that *Igneri* had been abrogated.

The question was addressed by the Supreme Court in *American Export Lines, Inc. v. Alvez, supra,* where the wife of a longshoreman injured on a ship in New York territorial waters sought damages for loss of society. In a decision announced through the opinion of a four-member plurality, the Court held that such damages were recoverable. The *Alvez* plurality discussed the *Igneri* holding, and stated:

> "Subsequent developments, however, have altered the legal setting within which we confront a claim for loss of society due to personal injury. In 1970, Moragne v States Marine Lines, supra, overruled The Harrisburg, 119 US 199, 30 L Ed 358, 7 S Ct 140 (1886), and held that an action for wrongful death based upon unseaworthiness is maintainable under general federal maritime law. Moragne itself did not fully define the new, nonstatutory, cause of action, and its contours were further shaped some four years later by Sea-Land Services v Gaudet. Gaudet held, inter alia, that the maritime wrongful-death remedy created by Moragne encompassed the recovery of damages for loss of society by a decedent's widow. So, it is no longer correct to assume — as did Igneri — that the warranty of seaworthiness affords no relief to the spouse of a longshoreman. More importantly, Gaudet provides the conclusive decisional recognition of a right to recover for loss of society that Igneri found lacking." 446 US at 280.

The essential point of the plurality in *Alvez* was that there is no basis for differentiating between the compensability of a loss on the grounds that it results from a death rather than a nonfatal injury. Hence, the holding in *Gaudet* that damages for loss of society were recoverable by a widow compelled the

conclusion in *Alvez* that the wife of the injured longshoreman was entitled to seek relief for the same loss.

The defendant here contends that *Alvez* is not controlling because the plaintiff in *Alvez* was the wife of a *longshoreman,* while the plaintiff in this case is the wife of a *seaman.* As such, according to defendant, the plaintiff in *Alvez* had rights under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 901 *et seq.)* (LHWCA) which are not available to seamen and their dependents under DOHSA or the Jones Act. Defendant also argues, in essence, that DOHSA and the Jones Act define the remedies which are available to seamen and their dependents, and that neither act permits recovery for loss of consortium. Defendant relies on *Mobil Oil Corp. v. Higginbotham,* 436 US 618, 98 S Ct 2010, 56 L Ed 2d 581 (1978), in which the Supreme Court held that damages for loss of society were not recoverable by the widows of persons killed *outside the three mile limit,* because DOHSA provides the exclusive remedy for survivors of persons killed on the high seas, and the damages which DOHSA contemplates — which do not include damages for loss of society — cannot be supplemented by general maritime law *in cases where the statute applies.*

The difficulty, as we see it, with defendant's arguments is that they presuppose that the rights of the plaintiff in *Alvez,* and of the plaintiff here, are controlled by statute, and that, among other things, a longshoreman's wife has a statutory right to loss of consortium damages under LHWCA. The plurality in *Alvez* appear to have undercut that position by rejecting the argument of plaintiff's husband's employer that plaintiff could not recover damages for loss of society because such damages were outside the scope of relief provided by the LHWCA at the time of her husband's injury. The plurality opinion stated:

> "Respondent Joseph Vinal Ship Maintenance, the interests of which parallel petitioner's, has advanced the argument that recovery for loss of society is barred by the Longshoremen's and Harbor Worker's Compensation Act as applicable at the time of the

injury — i.e., before the 1972 Amendments. It does not appear that this contention was raised below; in any event, it has no merit. Whatever the limitations on recovery against employers under the pre-1972 LHWCA, longshoremen retained additional rights based upon the warranty of seaworthiness. * * *" 446 US at 283, n 10.

In essence, the LHWCA neither grants nor precludes such damages; the court was free to permit them, which it did.

Further, the *Alvez* plurality rejected arguments identical to those advanced by defendant here that either DOHSA or the Jones Act precludes more liberal general maritime law remedies for losses resulting from injuries to seamen in territorial waters. As stated by the plurality:

"The Death on the High Seas Act comprehends relief for *fatal* injuries incurred on the *high seas,* 46 USC § 761 [46 USCS § 761]. To be sure, Mobil Oil Corp. v Higginbotham, supra, construed DOHSA to forbid general maritime law supplementation of the elements of compensation for which the Act provides. But Higginbotham never intimated that the preclusive effect of DOHSA extends beyond the statute's ambit. To the contrary, while treating the statutory remedies for wrongful deaths on the high seas as exclusive, Higginbotham expressly reaffirmed that Gaudet governs recoveries for wrongful deaths on territorial waters. 436 US, at 623-625, 56 L Ed 2d 581, 98 S Ct 2010; see Moragne, supra, at 397-398, 26 L Ed 2d 339, 90 S Ct 1772. And if DOHSA does not pre-empt general maritime law where *fatalities* occur *within* territorial waters, it follows a fortiori that the Act does not exclude federal maritime law as a source of relief for *nonfatal* injuries upon the same waters.

"Nor do we read the Jones Act as sweeping aside general maritime law remedies. Notwithstanding our sometime treatment of longshoremen as pseudo-seamen for certain Jones Act purposes, * * * the Jones Act does not exhaustively or exclusively regulate longshoremen's remedies * * *. Furthermore, the Jones Act lacks such preclusive effect even with respect to true seamen; thus, we have held that federal maritime law permits the dependents of seamen

killed within territorial seas to recover for violation of a duty of seaworthiness that entails a stricter standard of care than the Jones Act. * * *" 446 US at 283. (Citations omitted; emphasis in original).

We are unpersuaded by defendant's arguments aimed at distinguishing *Alvez* from the present case, and we conclude that the rationale of the plurality in *Alvez* controls the issue before us.

■ Neither party questions whether the *plurality* opinion in *Alvez* is binding upon this court. *Cf.* Annotation, 65 ALR 3d 504 (1975). As indicated in the margin, it would *appear* likely that at least one other member of the court would share the four member plurality's conclusions on the relevant issue if he considered the issue to be properly before the court, and that a second member who did not join the prevailing opinion agreed that that opinion necessarily follows from *Gaudet.* [3] In any event, whether or not the plurality opinion binds us, we agree with the plurality that there is no logical basis for differentiating between the right of wives of fatally injured seamen or longshoremen and the right of wives whose husbands are nonfatally injured to seek damages under the general maritime law for loss of their husbands' society.

It follows that plaintiff has alleged a cause of action for loss of consortium, and that the trial court erred in sustaining the demurrer.

Reversed and remanded.

---

[3] Two members of the court who did not subscribe to the plurality opinion supported the result reached by the plurality. Justice Powell concurred, stating that he had dissented in *Gaudet* and continued to believe that *Gaudet* had been wrongly decided. He agreed, however, that there was no basis for differentiating between the right of wives of fatally versus nonfatally injured longshoremen to seek damages for loss of society. Chief Justice Burger, who was also one of the dissenters in *Gaudet,* concurred without opinion in the judgment in *Alvez.* Justice Marshall dissented in *Alvez* for himself and Justices Stewart and Rehnquist, on the grounds that the Supreme Court had no jurisdiction under 28 USCA § 1257 because the state court judgment was not final. Marshall had been a member of the majority in *Gaudet;* the other two *Alvez* dissenters had dissented in *Gaudet.*