In re **KOREAN AIR LINES DISASTER OF SEPTEMBER 1, 1983.**

William H. **STEVENS,** as Personal Representative and Administrator of the Estate of Hiroko Stevens, deceased, Plaintiff,

v.

**KOREAN AIR LINES,** Defendant.

No. 84 Civ. 3773 (MJL).

United States District Court, S.D. New York.

Jan. 12, 1993.

See also 146 F.R.D. 61, 814 F.Supp. 592, 814 F.Supp. 605.

---

**600**

Kreindler & Kreindler, New York City by Milton G. Sincoff, Steven R. Pounian, and Robert J. Spragg, for plaintiff.

Condon & Forsyth, New York City by George N. Tompkins, Jr. and Andrew J. Harakas, for defendant.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is the motion of defendant Korean Air Lines ("KAL") to strike the plaintiff's demand for a jury trial on the issue of damages. For the reasons that follow, KAL's motion to strike the jury demand is denied.

## BACKGROUND

This case arose from the downing of KAL flight KE007 by Soviet military aircraft on September 1, 1983. It is one of many actions brought by survivors of the passengers, alleging that misconduct by KAL contributed to the tragedy. The actions were consolidated for determination of the liability issues, and a jury found that willful misconduct of the plane's flight crew was a proximate cause of the incident.[1] The actions, including this one, were then transferred back to their original courts for decision of the remaining issues, primarily damages.

In the liability phase, KAL moved to strike the plaintiffs' demand for a jury trial, but its motion was denied. *In re Korean Air Lines Disaster of September 1, 1983*, 704 F.Supp. 1135 (D.D.C.1988), *aff'd in part, vacated in part, In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475 (D.C.Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). When KAL appealed the liability finding, it elected not to challenge the district court's ruling on the jury trial issue. KAL now presents this Court with a substantially identical motion to prevent a jury trial in the damages phase of the litigation.

## DISCUSSION

### A. Law of the Case

Plaintiff argues that this Court should reject KAL's motion outright because the issue

---

1. Liability was established in a trial held before the United States District Court for the District of Columbia pursuant to an order of the Judicial Panel on Multidistrict Litigation. *See In re Korean Air Lines Disaster of September 1, 1983*, 575 F.Supp. 342 (J.P.M.L.1983) (ordering multidistrict proceedings); *see also In re Korean Air Lines Disaster of September 1, 1983*, 704 F.Supp. 1135 (D.D.C.1988) (denying motion to strike jury trial demand), *aff'd in part, vacated in part, In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475 (D.C.Cir.1991) (upholding jury finding of willful misconduct and reversing award of punitive damages), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

has already been decided in this case. Other judges faced with the issue have agreed with plaintiff's position that KAL does not deserve "another bite at the apple." *See, e.g., In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073 (S.D.N.Y.1992) (Motley, J.); *Kyung Hwa Park v. Korean Air Lines Co.,* No. 83 Civ. 7900, 1992 WL 331092, 1992 U.S.Dist. LEXIS 16841 (S.D.N.Y. Oct. 29, 1992) (Buchwald, Mag. J.); *In re Korean Air Lines Disaster of September 1, 1983,* 798 F.Supp. 755 (E.D.N.Y.1992) (Platt, J.). Those judges have relied, explicitly or implicitly, on the "law of the case" doctrine: that "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir.1991).

■ The law of the case doctrine in its simplest and most absolute form requires lower courts to follow decisions made by higher courts at earlier stages of the same litigation. 1B James W. Moore, et al., *Moore's Federal Practice* ¶ 0.404[1], at 118 (2d ed. 1992). The doctrine also has strong roots where, as here, a party has appealed but omitted the issue in question from its appeal. *Fogel v. Chestnutt,* 668 F.2d 100, 108–09 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). Still, this Court is hesitant to apply the law of the case rigidly to an appeal from a partial judgment like the one on liability in this case. The Court will retain its discretion to reconsider prior rulings. *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983).

This case is unusual in that the prior ruling on the jury trial issue came not from this Court but from the District Court for the District of Columbia. The decisions of that court will of course be accorded the deference that this Court would accord its own decisions. Yet, realistically speaking, the issues have not been examined in this Court. Some measure of de novo consideration is necessary if this Court's deference is to have any studied basis. Accordingly, the substance of KAL's motion will be addressed, though in the end the motion would have to prove especially meritorious to justify a departure from the prior ruling.

## B. Right to Jury Trial

■ The key to deciding this motion is the nature of plaintiff's rights under the Multilateral Convention for the Unification of Certain Rules Relating to International Transportation by Air, *opened for signature* October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (reprinted at 49 U.S.C.A.App. § 1502 historical note) [hereinafter the "Convention"]. Plaintiff argues that the Convention establishes independent federal common law rights against air transportation tortfeasors for fatalities caused on the high seas. KAL argues that such fatalities are compensable exclusively according to the provisions of the Death on the High Seas Act ("DOHSA"). 46 U.S.C.App. § 761–68. Whether plaintiff is entitled to a jury trial depends on whether KAL is correct in asserting that the Convention calls for merely plugging in DOHSA, which carries no jury right, *see Romero v. International Terminal Operating Co.,* 358 U.S. 354, 371 n. 28, 79 S.Ct. 468, 479 n. 28, 3 L.Ed.2d 368 (1959), or whether plaintiff is correct in asserting that the Convention establishes an independent common law right of recovery, which would carry a jury right. *See Curtis v. Loether,* 415 U.S. 189, 194–96, 94 S.Ct. 1005, 1008–09, 39 L.Ed.2d 260 (1974). The Court holds that the Convention does establish a federal common law right to recovery. It follows, then, that KAL's motion to strike the jury demand must be denied.

### 1. *Maritime Tort Recovery Background*

The centrality of DOHSA to KAL's argument warrants a brief review of the law governing wrongful death within and outside the territorial waters of the United States. In the beginning, there was darkness for those seeking recovery. The United States Supreme Court held in *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), that there was no federal common or maritime law right to recover for wrongful death; any right would have to be found in federal or state statutes. As it was, no federal wrongful death statutes existed, so survivors were left to the greatly varied collection of

**602**

state laws, sometimes finding no available basis for recovery at all.

The situation was sufficiently intolerable that, in 1920, Congress enacted DOHSA to provide a uniform basis of recovery for wrongful death acts committed "beyond a marine league"—three miles—from shore. 46 U.S.C.App. § 761. Apparently, a judgment was made that state law still would be tolerable near shore, which was understandable, because it merely treated torts near a state's shore the same as torts on land. The call was for uniformity on the high seas, not harmonization of all state tort systems.

The Supreme Court, meanwhile, remained suspicious of *The Harrisburg*'s finding that no federal common or maritime law right existed for wrongful death. In 1970, the Court reversed itself and held that a federal common or maritime law right did exist for wrongful death. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). But ironically, the vindicated federal common law remedy was now a mere shadow of what it might have been, because on the high seas DOHSA still defined by statute what otherwise would have been defined by judicial exposition. The common law right was left to share concurrent applicability with state law rights in the narrow band of waters up to one marine league from shore, with DOHSA exclusively applicable on the high seas beyond. *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).[2] The question to be decided in this case is whether the same scheme applies to international air transportation. This Court holds that it does not.

**2.** Strictly speaking, DOHSA is not the only statute applicable on the high seas. Others, like the Jones Act, 46 U.S.C.App. § 688(a), apply to such subjects as injuries to employees. But DOHSA is unique in providing recovery for *passengers.*

**3.** *In re Korean Air Lines Disaster of September 1, 1983,* 807 F.Supp. 1073 (S.D.N.Y.1992); *Kyung Hwa Park v. Korean Air Lines Co.,* No. 83 Civ. 7900, 1992 WL 331092, 1992 U.S.Dist. LEXIS 16841 (S.D.N.Y. Oct. 29, 1992) (Buchwald, Mag. J.); *In re Korean Air Lines Disaster of September 1, 1983,* 798 F.Supp. 755 (E.D.N.Y.1992); *In re Air Crash Disaster Near Honolulu, Haw., on Feb. 24, 1989,* 783 F.Supp. 1261 (N.D.Cal.1992); *In re*

### 2. *Land, Sea and Air*

■ The relationship between the Convention and DOHSA has been considered by a number of courts, and the conclusion in every case has been that DOHSA does not apply exclusively, if at all, to suits brought under the Convention.[3] It is tempting to just cite such widespread agreement and dispose of the issue without further discussion. But some of the best reasons for denying DOHSA a controlling role in international air transportation have been understated in the recent decisions, so a few additional words on the subject may not be merely cumulative.

The departure point for any court in this Circuit is *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), in which the Second Circuit stated: "we adopt substantive federal common law as the law governing the cause of action under the Warsaw Convention." *Id.* at 1279. The Court also cited with approval two cases that bear directly on the question here. First, it cited the decision of the district court denying a jury trial in the liability phase of this very litigation. *Id.* (citing *In re Korean Air Lines Disaster of September 1, 1983,* 704 F.Supp. 1135 (D.D.C. 1988), *aff'd in part, vacated in part, In re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991)). Second, it cited the Supreme Court decision establishing that wrongful death is recognized in the federal common law. *Id.* (citing *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)). The unmistak-

*Inflight Explosion on Trans World Airlines, Inc. Aircraft Approaching Athens, Greece on Apr. 2, 1986,* 778 F.Supp. 625 (E.D.N.Y.1991), *rev'd on other grounds sub nom. Ospina v. Trans World Airlines, Inc.,* 975 F.2d 35 (2d Cir.1992); *In re Korean Air Lines Disaster of September 1, 1983,* 704 F.Supp. 1135 (D.D.C.1988), *aff'd in part, vacated in part, In re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); *In re Air Crash Disaster in the Ionian Sea on Sept. 8, 1974,* No. M.D.L. 229, 1979 WL 2973 (S.D.N.Y. Apr. 10, 1979) (LEXIS, Genfed library, Dist file).

able direction of the Second Circuit is that federal common law rights are created by the Convention. That alone is enough to support plaintiff's demand for a jury trial. *Curtis,* 415 U.S. 189, 94 S.Ct. 1005.

Further inspection of KAL's argument only confirms that it is at odds with this Circuit's view of the Convention; "plugging in" DOHSA as the Convention's exclusive remedy in this country for fatal high seas torts would ignore the premium that the Convention places on uniformity. In *Lockerbie,* the Second Circuit described and decided between its options as follows:

> [t]wo choices are generally available to a court in deciding the law created by a federal cause of action: adopting state law or creating a uniform federal common law. It would make little sense to adopt state law when uniform interpretation of the federal law is more consistent with the Convention's purposes.

*Id.* at 1278. The same reasoning warrants rejection of KAL's argument. There are two choices available to this Court: adopting a hodgepodge of different rights dependent upon the location of the wrong, or creating a uniform federal common law. KAL prefers a hodgepodge, arguing that the internal law of the United States should just be plugged into the Convention—that uniformity *within* a nation is immaterial as long as some means for recovery is provided for all plaintiffs. *Lockerbie* is in direct conflict with that theory. Uniformity within this nation *is* a value to be pursued in the name of the Convention.

Once internal uniformity is recognized as a value to be pursued, the incompatibility of DOHSA with the Convention becomes clear. DOHSA applies only to torts committed on the high seas, beyond a marine league from shore.[4] While a liberal construction may be able to extend its ambit into the airspace above, *see Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, no reasonable construction can expand its coverage into territorial waters or

land (or the airspace above them). That leaves a great deal of space to be filled if the Convention's mandate is to be honored.

Article 17 of the Convention establishes carriers' liability for damage sustained "on board the aircraft or in the course of any of the operations of embarking or disembarking." That covers damage on the ground at the point of departure, damage in the airspace over the land of the nation of departure, damage over the territorial water of the nation of departure, damage over the high seas, damage over the territorial water of the nation of arrival, damage in the airspace over the land of the nation of arrival, and damage on the ground at the point of arrival. One might also subdivide "airspace over the land of the nation" into "airspaces over the land of the different states within the nation."

KAL effectively invites this Court to hold that the substantive law applicable to international air transportation torts depends on locating the wrongdoing somewhere in that myriad of spatial zones. Defendant's Memorandum at 7–8. That invitation not only must be declined, it demonstrates as well as anything why KAL's theory cannot be accepted. An aircraft on any given international flight plan might pass through many of these substantive law zones, remaining in some for only a matter of seconds. The result would be a wildly transient applicable substantive law.

The United States Supreme Court has accepted the risk of this scheme to the extent that it applied DOHSA to a helicopter accident on the high seas. According to the Court, "[i]t is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute." *Higginbotham,* 436 U.S. at 624, 98 S.Ct. at 2014. Of course, the Court was already stretching "the statute," covering a helicopter with something

---

4. The plain language of DOHSA makes its applicability turn on the location of the wrongdoing, not the location of the death. *See Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 599, 600 n. 5, 94 S.Ct. 806, 822 n. 5, 39 L.Ed.2d 9 (1974) (Powell, J., dissenting on other grounds); *Public Adm'r of New York v. Angela Compania Naviera,*

S.A., 592 F.2d 58, 63 (2d Cir.) (applicability of DOHSA turns on where death is "caused"), *cert. dismissed* 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979). *But see Stoddard v. Ling–Temco–Vought, Inc.,* 513 F.Supp. 314, 318 (C.D.Cal. 1980), *remanded on other grounds,* 711 F.2d 1431 (9th Cir.1983).

that was written for boats. But more importantly, *Higginbotham* was an easy case. The Convention was inapplicable because the case did not involve international aviation. Convention, art. 1 (" '[I]nternational transportation' shall mean any transportation in which ... the place of departure and the place of destination ... are situated ... within the territories of two High Contracting Parties ..."); *Higginbotham*, 436 U.S. at 619, 98 S.Ct. at 2011 (crash of helicopter used for transportation to offshore drilling operations); *see also Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir. 1972) (crash of military aircraft engaged in training exercise).[5] In the present case, the desire for uniformity is not just an abstract judicial yearning; it is founded upon a treaty that is subsequent in date to DOHSA.[6]

This Court could follow the lead of *Higginbotham*, treat the scheme of substantive law zones as the law of the land, hope for the best in identifying the place of commission in future cases, and hold DOHSA applicable to the Korean Air Lines incident (assuming that the willful misconduct occurred over the high seas and not, for example, over Japanese land—facts to which KAL's motion does not allude). Or it could adhere closely to the Second Circuit's emphasis in *Lockerbie*. The foregoing discussion leads this Court to the judgment that a uniform common law approach better serves the Convention's "goals of uniformity and certainty" for international air passengers from embarkment to disembarkment. Convention, art. 17; *Lockerbie*, 928 F.2d at 1275.

The uniform approach is also consistent with the history of maritime tort. Now that the reason for DOHSA's existence—*The Harrisburg*—has been discredited, courts need not be too creative in expanding the statute's reach to cover things that were not contemplated by its drafters.

The determination that rights under the Convention are creatures of common law and not of DOHSA makes the existence of a right to jury trial incontrovertible. *Curtis*, 415 U.S. 189, 94 S.Ct. 1005. The Convention establishes a common law right "enforceable in an action for damages in the ordinary courts of law." *Id.*, 415 U.S. at 194, 94 S.Ct. at 1008. Plaintiff is entitled to a jury trial.

### CONCLUSION

KAL's motion to strike plaintiff's demand for a jury trial is hereby denied.

It Is So Ordered.

---

5. The Supreme Court's opinion in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), did not resolve the relationship between DOHSA and the Convention. The Court there admittedly stated that DOHSA can apply to an airplane crash on the high seas. *Id.* at 271 n. 20, 93 S.Ct. at 505 n. 20. But that footnote was followed by an important caveat in the text—that "other factors might come into play in the area of international air commerce," including "multi-nation conventions and treaties." *Id.* at 272, 93 S.Ct. at 506.

6. Treaties and statutes are on a par with one another as expressions of the "supreme Law of the Land." U.S. Const. art. VI, para. 2. When they conflict, the subsequent one controls. *Restatement of the Foreign Relations Law of the United States (Revised)* § 135 (Tent.Final Draft 1985).

   The Court recognizes that " 'repeals by implication are not favored,' " *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)), and that "[t]he intention of the legislature to repeal 'must be clear and manifest.' " *Id.* (quoting *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939)). But this is an unusual case. The Convention entered into force for the United States in 1934—before it was known that DOHSA would be liberally construed by courts to cover the field of air transportation. If DOHSA's applicability to aircraft had been "well-established and clearly defined" by 1934, then it might be "reasonable to suppose that the legislative intent to change [the] rule would be unambiguously expressed." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 164, 96 S.Ct. 1989, 1998, 48 L.Ed.2d 540 (1976) (Stevens, J., dissenting). But that is not the case here. To demand a "clear and manifest" intent is to demand the impossible.