## MOBIL OIL CORP. *v.* HIGGINBOTHAM, ADMINISTRATRIX, ET AL.

No. 76–1726. Argued January 10, 11, 1978—Decided June 5, 1978

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, POWELL, and REHNQUIST, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post,* p. 626. BRENNAN, J., took no part in the consideration or decision of the case.

*Carl J. Schumacher, Jr.,* argued the cause for petitioner. With him on the brief were *E. D. Vickery* and *Charles C. Gray.*

*Jack C. Benjamin* argued the cause for respondents. With him on the brief for respondent Shinn was *Arthur A. Crais, Jr. Charles M. Thompson, Jr.,* filed a brief for respondents Higginbotham et al. *I. P. Saal, Jr.,* filed a brief for respondent Nation.

MR. JUSTICE STEVENS delivered the opinion of the Court.

This case involves death on the high seas. The question is whether, in addition to the damages authorized by federal statute, a decedent's survivors may also recover damages under general maritime law. The United States Court of Appeals for the Fifth Circuit, disagreeing with the First Circuit, held

that survivors may recover for their "loss of society," as well as for their pecuniary loss.[1] We reverse.

Petitioner used a helicopter in connection with its oil drilling operations in the Gulf of Mexico about 100 miles from the Louisiana shore. On August 15, 1967, the helicopter crashed outside Louisiana's territorial waters, killing the pilot and three passengers. In a suit brought by the passengers' widows, in their representative capacities, the District Court accepted admiralty jurisdiction [2] and found that the deaths were caused by petitioner's negligence. The court awarded damages equal to the pecuniary losses suffered by the families of two passengers.[3] Although the court valued the two families' loss of society at $100,000 and $155,000, it held that the law did not authorize recovery for this loss.[4] The Court of Appeals reversed, holding that the plaintiffs were entitled to claim

---

[1] Compare *Barbe* v. *Drummond,* 507 F. 2d 794, 800–802 (CA1 1974), with *Higginbotham* v. *Mobil Oil Corp.,* 545 F. 2d 422 (CA5 1977). The members of the *Higginbotham* panel expressed their agreement with *Barbe, supra,* but considered the issue foreclosed in their Circuit by *Law* v. *Sea Drilling Corp.,* 510 F. 2d 242, on rehearing, 523 F. 2d 793 (CA5 1975). In that case, another Fifth Circuit panel stated that the statutory remedy provided by the Death on the High Seas Act was no longer needed. *Id.,* at 798. See also n. 16, *infra.*

[2] 357 F. Supp. 1164, 1167 (WD La. 1973). The District Court bottomed admiralty jurisdiction on a finding that the helicopter was the functional equivalent of a crewboat. The ruling has not been challenged in this Court. Cf. *Executive Jet Aviation, Inc.* v. *Cleveland,* 409 U. S. 249, 271–272.

[3] 360 F. Supp. 1140 (WD La. 1973). One family received $362,297, the other $163,400. The District Court held that the third passenger's family could claim benefits only under the Longshoremen's and Harbor Workers' Compensation Act. 33 U. S. C. § 901 *et seq.* The Court of Appeals reversed this ruling. 545 F. 2d, at 431–433.

[4] The former figure included $50,000 for one widow and $50,000 for her only daughter. The latter figure included $25,000 for the second widow and for each of two minor children, as well as $20,000 for each of four older children. 360 F. Supp., at 1144–1148.

damages for loss of society. We granted certiorari limited to this issue. 434 U. S. 816.

## I

In 1877, the steamer *Harrisburg* collided with a schooner in Massachusetts coastal waters. The schooner sank, and its first officer drowned. Some five years later, his widow brought a wrongful-death action against the *Harrisburg*. This Court held that admiralty afforded no remedy for wrongful death in the absence of an applicable state or federal statute. *The Harrisburg*, 119 U. S. 199. Thereafter, suits arising out of maritime fatalities were founded by necessity on state wrongful-death statutes. See, *e. g., The Hamilton*, 207 U. S. 398.

In 1920, Congress repudiated the rule of *The Harrisburg* for maritime deaths occurring beyond the territorial waters of any State. It passed the Death on the High Seas Act (hereinafter sometimes DOHSA),[5] creating a remedy in admiralty for wrongful deaths more than three miles from shore. This Act limits the class of beneficiaries to the decedent's "wife, husband, parent, child, or dependent relative,"[6] establishes a two-year period of limitations,[7] allows suits filed by the victim to continue as wrongful-death actions if the victim dies of his injuries while suit is pending,[8] and provides that contributory negligence will not bar recovery.[9] With respect to damages, the statute declares: "The recovery . . . shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought . . . ."[10]

---

[5] 41 Stat. 537, 46 U. S. C. § 761 *et seq.*

[6] § 761.

[7] § 763.

[8] § 765.

[9] § 766. In addition, the statute preserved the applicability of local law on the Great Lakes, in the Panama Canal Zone, and within the States' territorial waters. § 767. Rights under foreign wrongful-death laws were also preserved. § 764.

[10] § 762.

In the half century between 1920 and 1970, deaths on the high seas gave rise to federal suits under DOHSA, while those in territorial waters were largely governed by state wrongful-death statutes.[11] DOHSA brought a measure of uniformity and predictability to the law on the high seas, but in territorial waters, where *The Harrisburg* made state law the only source of a wrongful-death remedy, the continuing impact of that decision produced uncertainty [12] and incongruity.[13] The reasoning of *The Harrisburg*, which was dubious at best in 1886,[14] became less and less satisfactory as the years passed.

In 1970, therefore, the Court overruled *The Harrisburg*. In *Moragne* v. *States Marine Lines, Inc.*, 398 U. S. 375, the Court held that a federal remedy for wrongful death does exist under general maritime law. The case concerned a death in Florida's territorial waters. The defendant argued that Congress, by limiting DOHSA to the high seas, had evidenced an intent to preclude federal judicial remedies in territorial waters. The Court concluded, however, that the reason Congress confined

---

[11] The death of a seaman was an exception to this rule. The Jones Act gives a remedy to the dependents of a seaman killed in the course of employment by his employer's negligence, no matter where the wrong takes place. § 688.

[12] In *The Tungus* v. *Skovgaard*, 358 U. S. 588, for example, the Court could not definitively determine whether New Jersey law allowed recovery for unseaworthiness or required proof of negligence.

[13] Three anomalies were identified in *Moragne* v. *States Marine Lines, Inc.*, 398 U. S. 375. In States with limited wrongful-death remedies, shipowners were liable if their breach of a maritime duty caused injury but not if the breach caused death. Furthermore, deaths due to unseaworthiness had a remedy on the high seas, but often went unremedied inside the three-mile limit. Finally, "true" seamen were denied the benefit of state wrongful-death laws while longshoremen doing seamen's work could assert claims under state law. *Id.*, at 395–396.

[14] The Court in *The Harrisburg* arrived at its conclusion after rejecting arguments founded on nothing more than "good reason," "natural equity," and the experience of nations like France and Scotland. 119 U. S., at 212–213.

DOHSA to the high seas was to prevent the Act from abrogating, by its own force, the state remedies then available in state waters. *Id.*, at 400.

In *Moragne* the Court left various subsidiary questions concerning the nonstatutory death remedy—such as the schedule of beneficiaries and the limitations period—for "further sifting through the lower courts in future litigation." *Id.*, at 408. A few years later, in *Sea-Land Services, Inc.* v. *Gaudet,* 414 U. S. 573, the Court confronted some of these questions. Among the issues addressed in *Gaudet* was the measure of survivors' damages.[15] The Court held that awards could include compensation for loss of support and services, for funeral expenses, and for loss of society, but not for mental anguish or grief. *Id.*, at 583–591. The Court recognized that DOHSA, which compensates only for pecuniary losses, did not allow awards for loss of society. But the accident in *Gaudet*, like that in *Moragne*, took place in territorial waters, where DOHSA does not apply. The Court chose not to adopt DOHSA's pecuniary-loss standard; instead it followed the "clear majority of States" and "the humanitarian policy of the maritime law," both of which favored recovery for loss of society. 414 U. S., at 587–588. In sum, the Court made a policy determination in *Gaudet* which differed from the choice made by Congress when it enacted the Death on the High Seas Act.

## II

The *Gaudet* opinion was broadly written. It did not state that the place where death occurred had an influence on its

---

[15] The primary issue in *Gaudet* was whether a decedent's survivors could bring a *Moragne* action even though the decedent himself had sued and recovered damages before dying. DOHSA offered no guidance on this issue. 414 U. S., at 583 n. 10. In the course of providing its own answer, the Court addressed the contention that the survivors' recovery would simply duplicate the decedent's. The Court outlined the elements of damages under the new maritime-death remedy and noted that several were distinct from those available to the decedent himself.

analysis. *Gaudet* may be read, as it has been, to replace entirely the Death on the High Seas Act.[16] Its holding, however, applies only to coastal waters. We therefore must now decide which measure of damages to apply in a death action arising on the high seas—the rule chosen by Congress in 1920 or the rule chosen by this Court in *Gaudet*.

As the divergence of views among the States discloses, there are valid arguments both for and against allowing recovery for loss of society. Courts denying recovery cite two reasons: (1) that the loss is "not capable of measurement by any material or pecuniary standard," and (2) that an award for the loss "would obviously include elements of passion, sympathy and similar matters of improper character." 1 S. Speiser, Recovery for Wrongful Death § 3:49 (2d ed. 1974).[17] Courts allowing the award counter: (1) that the loss is real, however intangible it may be, and (2) that problems of measurement should not justify denying all relief. See generally *Sea-Land Services, Inc.* v. *Gaudet, supra,* at 588–590.

In this case, however, we need not pause to evaluate the opposing policy arguments. Congress has struck the balance for us. It has limited survivors to recovery of their pecuniary losses. Respondents argue that Congress does not have the

---

[16] As Chief Judge Brown put it in *Law* v. *Sea Drilling Corp.,* 523 F. 2d 793 (CA5 1975): "It is time that the dead hand of *The Harrisburg*—whether in the courts or on the elbow of the congressional draftsmen of DOHSA—follow the rest of the hulk to an honorable rest in the briny deep. . . . No longer does one need . . . DOHSA as a remedy. There is a federal maritime cause of action for death on navigable waters—any navigable waters—and it can be enforced in any court." *Id.,* at 798.

[17] The award contemplated by *Gaudet* is especially difficult to compute, for the jury must calculate the value of the lost love and affection without awarding damages for the survivors' grief and mental anguish, even though that grief is probably the most tangible expression of the survivors' emotional loss. See *Sea-Land Services, Inc.* v. *Gaudet,* 414 U. S., at 585–586, n. 17. See also G. Gilmore & C. Black, Law of Admiralty 372 (2d ed. 1975).

last word on this issue—that admiralty courts have tradition-ally undertaken to supplement maritime statutes and that such a step is necessary in this case to preserve the uniformity of maritime law. Neither argument is decisive.

We recognize today, as we did in *Moragne,* the value of uniformity, but a ruling that DOHSA governs wrongful-death recoveries on the high seas poses only a minor threat to the uniformity of maritime law.[18] Damages aside, none of the issues on which DOHSA is explicit have been settled to the contrary by this Court in either *Moragne* or *Gaudet.* Nor are other disparities likely to develop. As *Moragne* itself implied,[19] DOHSA should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right. It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant,[20] a desire for uniformity cannot override the statute.

---

[18] *Moragne* proclaimed the need for uniformity in a far more compelling context. When *Moragne* was decided, fatal accidents on the high seas had an adequate federal remedy, while the same accidents nearer shore might yield more generous awards, or none at all, depending on the law of the nearest State. The only disparity that concerns us today is the difference between applying one national rule to fatalities in territorial waters and a slightly narrower national rule to accidents farther from land.

[19] *Moragne* recognized that the courts would need to devise a limitations period and a schedule of beneficiaries for the new death remedy. The Court considered several alternative solutions to these problems. Only DOHSA, however, figured prominently in the discussion of both issues. 398 U. S., at 405–408.

[20] It remains to be seen whether the difference between awarding loss-of-society damages under *Gaudet* and denying them under DOHSA has a great practical significance. It may be argued that the competing views on awards for loss of society, see *supra,* at 623, can best be reconciled by allowing an award that is primarily symbolic, rather than a substantial portion of the survivors' recovery. We have not been asked to rule on the

We realize that, because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. The Death on the High Seas Act, however, announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages. See nn. 6–10, *supra*. The Act does not address every issue of wrongful-death law, see, *e. g.*, n. 15, *supra*, but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.

In *Moragne*, the Court recognized a wrongful-death remedy that supplements federal statutory remedies. But that holding depended on our conclusion that Congress withheld a statutory remedy in coastal waters in order to encourage and preserve supplemental remedies. 398 U. S., at 397–398. Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of non-pecuniary supplements. See generally *Barbe* v. *Drummond*, 507 F. 2d 794, 801 n. 10 (CA1 1974); *Wilson* v. *Transocean Airlines*, 121 F. Supp. 85 (ND Cal. 1954). There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specificallly enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries. Perhaps the wisdom we possess

propriety of the large sums that the District Court would have awarded for loss of society in this case. See n. 4, *supra*.

Similarly, there may be no great disparity between DOHSA and *Gaudet* on the issue of funeral expenses. *Gaudet* awards damages to dependents who have paid, or will pay, for the decedent's funeral, evidently on the theory that, but for the wrongful death, the decedent would have accumulated an estate large enough to pay for his own funeral. 414 U. S., at 591. On that theory, the cost of the funeral could also be considered a pecuniary loss suffered by the dependent as a result of the death.

today would enable us to do a better job of repudiating *The Harrisburg* than Congress did in 1920, but even if that be true, we have no authority to substitute our views for those expressed by Congress in a duly enacted statute.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BLACK-MUN joins, dissenting.

Just a few years ago, in *Sea-Land Services, Inc.* v. *Gaudet,* 414 U. S. 573 (1974), this Court held that, "under the maritime wrongful-death remedy, [a] decedent's dependents may recover damages for their loss of . . . society . . . ." *Id.,* at 584. The fact that the injury there occurred within three miles of shore, in the territorial waters of a State, had no bearing on the decision at the time it was rendered, as the majority today recognizes, *ante,* at 622–623. Nor did we place any emphasis on the situs of injury when we first upheld the maritime wrongful-death remedy, as a matter of "general maritime law," in *Moragne* v. *States Marine Lines, Inc.,* 398 U. S. 375, 409 (1970). Today the Court takes a narrow and unwarranted view of these cases, limiting them to their facts and making the availability of recovery for loss of society turn solely on a ship's distance from shore at the time of the injury causing death.

A unanimous Court concluded in *Moragne* that the distance of a ship from shore is a fortuity unrelated to the reasons for allowing a seaman's family to recover damages upon his death. See *id.,* at 395–396, 405. These reasons are rooted in the traditions of maritime law, which has always shown "a special solicitude for the welfare of those men who undert[ake] to

venture upon hazardous and unpredictable sea voyages." *Id.,* at 387. See also *Gaudet, supra,* at 588 ("humanitarian policy of the maritime law"). In light of this "special solicitude," Mr. Justice Harlan examined in *Moragne* a number of "anomalies," 398 U. S., at 395–396, that had resulted from the earlier rule of *The Harrisburg,* 119 U. S. 199 (1886), under which the availability of a cause of action for wrongful death at sea depended entirely on the existence of a statutory remedy.

The "anomaly" most relevant for present purposes was that "identical breaches of the duty to provide a seaworthy ship, resulting in death, produce[d] liability outside the three-mile limit—since a claim under the Death on the High Seas Act may be founded on unseaworthiness . . . —but not within the territorial waters of a State whose local statute exclude[d] unseaworthiness claims." 398 U. S., at 395. The *Moragne* Court found "much force" in the argument of the United States (appearing as *amicus curiae*) that this difference in treatment based on location of the injury could not be supported by any "rational policy," especially since the underlying duty to furnish a seaworthy vessel is a federal one. *Id.,* at 395–396. Accordingly, because of this anomaly and others, the Court in *Moragne* declined to adhere any longer to "a rule unjustified in reason, which produces different results for breaches of duty in situations that cannot be differentiated in policy." *Id.,* at 405.

The Court today establishes a rule that, like the pre-*Moragne* rule, "produces different results . . . in situations that cannot be differentiated in policy." When death arises from injuries occurring within a State's territorial waters, dependents will be able to recover for loss of society under the "humanitarian" rule of *Gaudet.* 414 U. S., at 588. But once a vessel crosses the imaginary three-mile line, the seaman's dependents no longer have a remedy for an identical loss, occasioned by an identical breach of duty. Instead, they may recover only pecuniary losses, which are allowed them by the Death on the High Seas Act (DOHSA), 46 U. S. C. § 762.

The irony implicit in the Court's result is readily apparent. As in the pre-*Moragne* situation, the benefits available to a seaman's dependents will once again vary depending on whether the injury causing death occurs in state territorial waters or on the high seas. Now, however, more generous benefits will be available if the injury occurs in state waters. We have thus come full circle from *Moragne*, which was designed to eliminate reliance on an artificial three-mile line as the basis for disparate treatment of dependents of similarly situated seamen. There is undoubtedly a certain symmetry in the Court's return to the pre-*Moragne* anomalies, but it is a symmetry that is both patently unfair to a seaman's dependents and flatly inconsistent with the spirit of *Moragne* and *Gaudet*.

The dictates of fairness and the words of this Court would all be beside the point, of course, if Congress could be said to have made a determination to disallow any recovery except pecuniary loss with regard to deaths arising on the high seas. But Congress made no such determination when it passed DOHSA. Congress was writing in 1920 against the background of *The Harrisburg*, under which a remedy for death on the high seas depended entirely on the existence of a statute allowing recovery. This rule left many dependents without any remedy and was viewed as "a disgrace to civilized people." By enacting DOHSA, Congress sought to "bring our maritime law into line with the laws of those enlightened nations which confer a right of action for death at sea." S. Rep. No. 216, 66th Cong., 1st Sess., 4 (1919); H. R. Rep. No. 674, 66th Cong., 2d Sess., 4 (1920), quoted in *Moragne, supra,* at 397.

The Court today uses this ameliorative, remedial statute as the foundation of a decision denying a remedy. It purports to find, in the section of DOHSA that provides for "fair and just compensation for the pecuniary loss sustained," 46 U. S. C. § 762, a "considered judgment" by Congress that recovery must be limited to pecuniary loss, *ante,* at 625. Nothing in this

section, however, states that recovery must be so limited; certainly Congress was principally concerned, not with limiting recovery, but with ensuring that those suing under DOHSA were able to recover at least their pecuniary loss. As Representative Montague stated in the House debate, the Act was meant to provide a cause of action "in cases where there is now no remedy." 59 Cong. Rec. 4486 (1920). See generally S. Rep. No. 216, *supra*, at 2–5; H. R. Rep. No. 674, *supra*, at 2–4; 59 Cong. Rec. 4482–4486 (1920). See also *Moragne,* 398 U. S., at 393 (DOHSA was designed "to furnish [a] remedy denied by the courts").

Although recognizing that DOHSA was a response to *The Harrisburg, ante,* at 620, the majority opinion otherwise ignores the legislative history of the Act. The fundamental premise of the opinion—that Congress meant to "limi[t] survivors to recovery of their pecuniary losses," *ante,* at 623—is simply assumed. Today's decision thus stands in sharp contrast to *Moragne,* where Mr. Justice Harlan carefully surveyed the legislative history and then concluded that "no intention appears that the Act have the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." 398 U. S., at 400.

Because there is no congressional directive to foreclose nonstatutory remedies, I believe that maritime law principles require us to uphold the remedy for loss of society at issue here. The general approach that mandates this result was stated over 100 years ago by Mr. Chief Justice Chase, sitting on circuit, in a passage that has since been quoted in both *Moragne* and *Gaudet:*

> "[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *The Sea Gull,* 21 F.

Cas. 909, 910 (No. 12,578) (CC Md. 1865), quoted in 398 U. S., at 387; 414 U. S., at 583.

In the instant case we have no "established and inflexible rule"; we have at most an expression of the minimum recovery that must be available to.the dependents of a seaman who dies on the high seas. When DOHSA is read against the background out of which it arose—rather than as if it had been written after *Moragne* and *Gaudet*—it becomes apparent that Congress did not mean to exclude the possibility of recovery beyond pecuniary loss.

The only remaining issue is whether allowing recovery for loss of society would be "appropriate to effectuate the policies of general maritime law." *Moragne, supra,* at 400. This issue was resolved in *Gaudet,* where we stated, without any situs qualifications, that recovery for loss of society is not merely "appropriate to effectuate" maritime law policies but is "compelled" by them. 414 U. S., at 588. I would follow *Gaudet* in this case and thereby avoid the creation of a new and unfair "anomaly" of the type that *Moragne* was intended to eliminate.

Accordingly, I dissent.