REVISED - August 6, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-30248
_____


LINDA JACOBS, as Temporary Administratrix of the Estate of
Patrick Daniel Jacobs,

               Plaintiff-Appellee and Cross-Appellant,

               VERSUS


NORTHERN KING SHIPPING CO., LIMITED; SUN ENTERPRISES LIMITED, *in personam*; M/T MARINA, *in rem*,

               Defendants-Appellants and Cross-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

July 27, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellee Linda Jacobs, as Temporary Administratrix of the Estate of Patrick Jacobs, filed suit against Appellants Northern King Shipping Co., Ltd., Sun Enterprises, Ltd., and the M/T MARINA, *in rem*, (the "vessel interests") to recover damages arising out of the accidental death of her husband, Patrick Jacobs ("Jacobs") in Colombian waters. After a bench trial, the district court found the vessel interests 100 percent at fault for the death of Jacobs under the Death on the High Seas Act ("DOHSA") and awarded Appellee $443,000 in damages, including $200,000 for Jacobs' conscious pain and suffering. The principal issue on appeal relates to the

propriety of this latter award. For reasons that follow, we conclude that Jacobs' relatives cannot recover for the decedent's pre-death pain and suffering. Appellee is limited to the relief provided in DOHSA, Congress' comprehensive death act applicable to Jacobs' death. DOHSA does not allow recovery for such damages, and courts are not authorized to supplement DOHSA with the general maritime law or state law to permit recovery for Jacobs' pain and suffering.

## I.

Patrick Jacobs died on March 8, 1997, as a result of the injuries he sustained while on board the M/T MARINA. At the time of his death, Jacobs was employed by MAPCO Petroleum, Inc., the voyage charterer of the M/T MARINA, as a loss control representative. He was engaged to conduct a cargo inspection on board the M/T MARINA while the vessel was loading in Coveñas, Colombia. The M/T MARINA was owned by Northern King Shipping Co., Ltd. and managed by Sun Enterprises, Ltd.

On March 7, 1997, Jacobs traveled to Cartagena, Colombia. Jacobs then traveled to the vessel--located in Coveñas--with Relief Captain Fillipakis who noticed that Jacobs' face and neck were flushed and that his hand was trembling. At approximately 12:30 p.m. on March 8, 1997, Jacobs boarded the M/T MARINA.

After boarding the vessel, Jacobs checked the vessel's inner accommodation spaces and the IG pressure and cargo control console in the cargo control room. He then had dinner with the crew, sitting at the officers' table. Chief Engineer Hajimichailakis noticed that Jacobs' face was red and that his hand was shaking.

2

After dinner, the chief engineer saw Jacobs leave his cabin, again appearing red-faced and sweaty.

At 11:25 p.m. that evening, Jacobs, holding an empty drinking glass, emerged from his cabin on the starboard side of the vessel near the cargo control room. Captain Exameliotis, who was on the bridge at the time, saw Jacobs and asked him if he needed assistance. Jacobs responded in the negative and proceeded down the inner accommodation stairway between the bridge and the next deck level, the "D" deck. While descending the stairs, Jacobs apparently fell. The captain heard a noise, went to investigate, and again asked Jacobs if he needed assistance. Jacobs again responded in the negative.

Jacobs then proceeded through the "D" deck interior alleyway. Radio Operator Bibudis, who was in the radio room, heard loud noises and went out into the alleyway to investigate. There he saw Jacobs, who appeared to be confused and disoriented. The radio operator asked Jacobs if he needed assistance, but Jacobs mumbled incoherently in reply. Jacobs then continued on through the external port side door, exiting the accommodation structure onto the vessel's exterior "D" deck. The radio operator followed Jacobs onto the deck and saw Jacobs trying to climb the deck railing as if attempting to jump. When the radio operator approached Jacobs to assist him, Jacobs turned around and struck him with the drinking glass on the forehead over his left eye. The radio operator's head began to bleed, and he immediately turned around and went back to his cabin where he cleaned his wound for approximately four minutes.

In the meantime, the chief engineer had also heard the noises Jacobs was making and went to investigate. When the chief engineer exited the external door to the "D" deck, he saw Jacobs strike the radio operator. When the radio operator turned around and went back to his cabin, the chief engineer told him that he would call Captain Exameliotis. The chief engineer then ran to the bridge to notify the captain and to obtain assistance from the duty officers. Once on the bridge, the chief engineer and the captain ran out to the bridge wing, where they should have been able to see Jacobs, but Jacobs was gone. The captain ran down through the interior accommodation stairway where he found Apprentice Deck Officer Zoupas and told him to help him look for Jacobs.

The apprentice deck officer found Jacobs on the starboard side of the vessel on the vessel's exterior lower "A" deck at approximately 11:35 p.m. Jacobs was lying on his back underneath the starboard lifeboat, on the opposite side of the vessel and three decks below where he was last seen. He was bleeding from his left thigh and head. The captain and the apprentice deck officer lifted Jacobs and brought him into the first empty cabin. The captain then instructed the relief captain to communicate with agents for ISACOL and the cargo terminal, Floating Storage Unit, to send a doctor to the vessel immediately. The captain tied two tourniquets to stop the bleeding in Jacobs' left thigh, but Jacobs' heart soon stopped beating, and he stopped breathing. Jacobs died about 15 minutes after his fall. An autopsy confirmed that Jacobs' death resulted from hemorrhage and broken cervical vertebrae caused by the fall.

4

Linda Jacobs, as Temporary Administratrix of Patrick Jacobs' estate, brought suit against the vessel interests under DOHSA, 46 U.S.C. §§ 761, *et seq.*, the Jones Act, 46 U.S.C. §§ 688, *et seq.*, and general maritime law. She later amended her complaint to add a claim under the Texas Survival Statute, Tex.Civ.Prac. & Rem.Code § 71.021. Before trial, the district court dismissed Appellee's Jones Act claim following Appellee's acknowledgment that she had insufficient facts to sustain a Jones Act action. The district court also granted the vessel interests' pretrial motion for summary judgment and dismissed Appellee's claim under the Texas Survival Statute, holding that a plaintiff may not maintain both a state and a general maritime law survival action under *Thornhill v. Otto Candies*, 1994 WL 532591 (E.D. La. Sept. 27, 1994). The court concluded that Appellee's general maritime law survival action preempted her survival action under Texas law. The district court denied the vessel interests' summary judgment motion as to all other claims.

During a three-day bench trial, the court heard extensive evidence about Jacobs' medical history that shed light on Jacobs' behavior aboard the M/T MARINA. The evidence showed that Jacobs suffered from a serious liver condition caused by alcohol consumption and exposure to toxic chemicals. Jacobs' confused and disoriented state on board the M/T MARINA was consistent with hepatic encephalopathy, a neurological condition related to his liver condition. Jacobs had also apparently suffered two such episodes of confusion and disorientation before he boarded the M/T MARINA, but no definitive diagnosis of hepatic encephalopathy had

5

been made.

The district court, after holding that DOHSA was the controlling statute, found the vessel interests 100 percent responsible for the death of Patrick Jacobs. The district court declined to attribute any fault to Jacobs. The court found that although Jacobs was aware of his liver disease, he had consumed no alcohol in several months and had not been sufficiently warned of the dangers posed by his condition. The district court entered judgment in favor of Appellee and against the vessel interests in the amount of $443,000. This award included $35,000 for past loss of support; $200,000 for future loss of support; $200,000 in survival damages for Jacobs' conscious pain and suffering under the general maritime law; and $8,000 in funeral expenses. In an amended judgment, the district court awarded prejudgment interest on Appellee's award of survival damages and past and future loss of support. The vessel interests appeal from this judgment, and Appellee cross-appeals the amount of damages.

II.

A.

The vessel interests first contend that the district court's findings that they were negligent and that Jacobs was not comparatively negligent are clearly erroneous. We do not disturb the district court's factual findings unless they are clearly erroneous. *See* Fed.R.Civ.P. 52(a). "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson*

6

*v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.2d 746 (1948)). After carefully reviewing the record, we are satisfied that the evidence taken as a whole supports the district court's findings. We therefore decline to disturb the district court's factual findings.

B.

The vessel interests next argue that in light of *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998), the district court erred in awarding Appellee non-pecuniary survival damages for the decedent's pre-death pain and suffering under the general maritime law. The vessel interests contend that DOHSA is the exclusive remedy for Jacobs' death and cannot be supplemented by a general maritime law survival action.

Where a death occurs on the high seas, DOHSA provides a cause of action for wrongful death--an action by relatives of the decedent to sue for their pecuniary losses. *Id.* at __, 118 S.Ct. at 1892. DOHSA, however, provides no survival action--the action the decedent could have brought but for his death. *Id.*

Appellee argued to the district court that she should be permitted to supplement her DOHSA wrongful death cause of action by resorting to the general maritime law and thereby be able to recover survival damages--Jacobs' pre-death pain and suffering. The district court accepted this argument and awarded $200,000 to Appellee for Jacobs' pre-death pain and suffering.

After the district court decided this case, the Supreme Court

7

decided *Dooley*.  In *Dooley*, the Supreme Court rejected a similar argument and held that DOHSA was the plaintiffs' exclusive remedy and that the decedent's relatives could not look to the general maritime law to supplement their DOHSA wrongful death action and thereby find authority to assert a survival action for the decedent's pre-death pain and suffering.  *Id.* at __, 118 S.Ct. at 1895.

Now that we have the benefit of the Supreme Court's decision in *Dooley*, it is clear that the district court erred in awarding survival damages for Jacobs' pain and suffering under the general maritime law as a supplemental remedy to DOHSA.  Appellee, however, offers an alternative argument to sustain this award, to which we turn next.

## C.

Appellee argues alternatively that this Court should uphold the district court's award of damages for the decedent's pre-death pain and suffering under the Texas Survival Statute.[1]  *See Gaia Technologies Inc. v. Recycled Products Corp.*, 1999 WL 292919, *4 (5th Cir. 1999).  Appellee contends that, at most, *Dooley* addresses the availability of a survival action under the general maritime law to supplement DOHSA.  Appellee argues that *Dooley* does not preclude a holding that DOHSA may be supplemented by a state survival statute to recover survival damages.  Although Appellee is correct that *Dooley* itself does not expressly foreclose the argument that DOHSA may be supplemented by a state survival action,

---

[1]  As stated above, Appellee's claim under the Texas Survival Statute was dismissed as being duplicative of her claim under the general maritime law.

8

the reasoning of the Supreme Court in a number of decisions forecloses such a result. Based on these decisions, we conclude that the Congressionally authorized wrongful death remedy in DOHSA may not be supplemented with a survival action under either the general maritime law or state survival acts.

Before the enactment of DOHSA in 1920, the general maritime law did not permit an action for damages arising from a death on the high seas, although it did permit a person *injured* by tortious conduct to recover damages. Jason P. Minkin, *United States Supreme Court Denies Survival Action Under General Maritime Law: Dooley v. Korean Air Lines Co.*, 23 Tul.Mar.L.J. 229, 231 (1998). *See The Harrisburg*, 119 U.S. 199, 213, 7 S.Ct. 140, 146-47, 30 L.Ed.2d 358 (1886). In 1920, Congress sought to alleviate this harsh feature of admiralty law by enacting the Death on the High Seas Act. DOHSA created a remedy in admiralty for deaths occurring more than three miles from shore as a result of wrongful act, neglect, or default. The action must be brought by the decedent's personal representative "for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative." 46 U.S.C. App. § 761 (1988). Furthermore, DOHSA limits recovery to "a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." *Id.* § 762.

In 1978, the Supreme Court decided *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In that case, relatives of passengers killed in a helicopter crash beyond the territorial limits of Louisiana brought a DOHSA/general maritime law action to recover for the decedent's wrongful death.

9

The Supreme Court addressed whether the decedent's survivors could recover non-pecuniary damages for loss of society under the general maritime law in addition to the pecuniary damages authorized by DOHSA. The Court held that in a case of death on the high seas, DOHSA rather than the general maritime law governs the recoverable damages, and thus non-pecuniary damages could not be recovered in a DOHSA action. *Id.* at 625-26, 98 S.Ct. at 2015.

The Court stated that because Congress has never enacted a comprehensive maritime code, admiralty courts have often been called upon to supplement maritime statutes. *Id.* at 625, 98 S.Ct. at 2015. However, the Court distinguished those statutes from the Death on the High Seas Act, which "announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages." *Id.* Because the Act addresses the issue of recoverable damages and limits them to pecuniary losses, courts are not "free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* By enacting a comprehensive death act--DOHSA-- Congress "struck the balance" for the Court by limiting survivors to recovery of their pecuniary losses. *Id.* at 623, 98 S.Ct. at 2014. The Court declared:

> Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.

*Id.* at 625, 98 S.Ct. at 2015 (citations omitted).

10

The Supreme Court again considered whether the damages provided in DOHSA could be supplemented in yet another context in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). In that case the decedent's relatives sought to recover, in addition to their pecuniary losses authorized by DOHSA, their non-pecuniary losses consisting of loss of companionship and loss of love and affection. Because the plaintiffs were foreclosed by *Higginbotham* from claiming these damages under the general maritime law, they sought to supplement the allowable damages under DOHSA with the adjacent state death act. The Supreme Court rejected the plaintiffs' arguments that they were entitled to resort to state death acts to supplement their DOHSA remedy. *Id.* at 232, 106 S.Ct. at 2499. The Court, following *Higginbotham*'s reasoning, held that "'when DOHSA does speak directly to a question, the courts are not free to "supplement" Congress' answer . . . .'" *Id.* at 232, 106 S.Ct. at 2499 (quoting *Higginbotham*, 436 U.S. at 625, 98 S.Ct. at 2015). The court concluded that where DOHSA applies--as it did in that case to fix the wrongful death damages--state statutes are preempted. The Court, however, expressly left open the question of "whether the DOHSA recovery for the beneficiaries' pecuniary loss may be 'supplemented' by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably applicable state statute that is intended to apply on the high seas." *Tallentire*, 477 U.S. at 215 n.1, 106 S.Ct. at 2490 n.1.

In *Dooley*, the Supreme Court addressed a question closely

11

related to the issue it left open in *Tallentire*.  The Court considered whether the plaintiffs could supplement their DOHSA remedy and recover for the decedent's pain and suffering under the general maritime law.  The plaintiffs argued that "because DOHSA is a wrongful death statute--giving surviving relatives a cause of action for losses *they* suffered as a result of the decedent's death--it has no bearing on the availability of a survival action." *Dooley*, 524 U.S. at __, 118 S.Ct. at 1894.

The Court rejected the plaintiffs' arguments in the following terms:

> We disagree.  DOHSA expresses Congress' judgment that there should be no such cause of action in cases of death on the high seas.  By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas.  Petitioners concede that their proposed survival action would necessarily expand the class of beneficiaries in cases of death on the high seas by permitting decedents' estates (and their various beneficiaries) to recover compensation.  They further concede that their cause of action would expand the recoverable damages for deaths on the high seas by permitting the recovery of non-pecuniary losses, such as pre-death pain and suffering.  Because Congress has already decided these issues, it has precluded the judiciary from enlarging either the class of beneficiaries or the recoverable damages. . . .

> The comprehensive scope of DOHSA is confirmed by its survival provision, which limits the recovery in such cases to the pecuniary losses suffered by surviving relatives.  The Act thus expresses Congress' "considered judgment," *Mobil Oil Corp. v. Higginbotham*, on the availability and contours of a survival action in cases of death on the high seas.  For this reason, it cannot be contended that DOHSA has no bearing on survival actions; rather, Congress has simply chosen to adopt a more limited survival provision. . . .Even in the exercise of our admiralty jurisdiction, we will not upset the balance struck by Congress by authorizing a cause of action with which Congress was certainly familiar but nonetheless declined to adopt.

> In sum, Congress has spoken on the availability of a survival action, the losses to be recovered, and the

12

beneficiaries in cases of death on the high seas.

*Id.* at __, 118 S.Ct. at 1895 (citations omitted).

Although the Court in *Dooley* did not consider whether DOHSA could be supplemented by a *state survival act* to permit the recovery of survival damages, when read together, the reasoning of *Higginbotham, Dooley* and *Tallentire* definitively answers this question.[2]

In *Higginbotham*, the Court held that DOHSA is a comprehensive act that governs allowable wrongful death damages and that plaintiffs cannot look to the general maritime law to supplement these damages. *Higginbotham*, 436 U.S. at 626, 98 S.Ct. at 2015. Similarly, in *Tallentire*, the Court held that because DOHSA has spoken to the question of recoverable wrongful death damages, state statutes are preempted by DOHSA where it applies. *Tallentire*, 477 U.S. at 232, 106 S.Ct. at 2499. The Court therefore declined to allow the plaintiffs to look to state wrongful death acts to supplement their DOHSA wrongful death damages.

Although the Court in *Tallentire* left open the question of whether a plaintiff could look to state survival statutes to supplement a DOHSA wrongful death remedy, *Dooley* effectively closed this gap. *Dooley* holds that Congress, in DOHSA, has spoken on the availability of a survival action and has chosen not to authorize

---

[2] *See also Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). In this case, the Supreme Court considered the availability of loss of society damages under DOHSA in an action (essentially identical to *Dooley*) by the survivors of a passenger killed by the crash of Korean Air Lines flight KE007 over the Sea of Japan. The Court, consistent with *Higginbotham* and *Tallentire*, held that non-pecuniary damages for loss of society may not be recovered under the general maritime law or under state law because DOHSA supplies the exclusive remedy.

one. *Dooley*, 524 U.S. at __, 118 S.Ct. at 1894-95. Because Congress left no gap in the Congressional scheme capable of being supplemented, the Court declined to authorize a survival cause of action under the general maritime law. The Court's determination in *Dooley* that Congress has spoken on the availability of a survival action also precludes courts from supplementing an action under DOHSA by resort to state survival acts. As the Court stated in *Tallentire*, "the conclusion that the state statutes are preempted by DOHSA where it applies is inevitable." *Tallentire*, 477 U.S. at 232, 106 S.Ct. at 2499.

Therefore we conclude that DOHSA is Appellee's exclusive remedy for Jacobs' death, and she cannot look to state law to support a recovery for Jacobs' pre-death pain and suffering. That part of the district court's judgment awarding Appellee damages for Jacobs' pre-death pain and suffering is vacated.

### D.

The vessel interests next challenge the district court's grant of prejudgment interest on Appellee's future loss of support award. The award of prejudgment interest in death claims under DOHSA is discretionary with the trial court. *Solomon v. Warren*, 540 F.2d 777, 794 (5th Cir. 1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). However, it is the rule in this Circuit that prejudgment interest may not be awarded with respect to future damages. *Couch, III v. Cro-Marine Transport, Inc.*, 44 F.3d 319, 328 (5th Cir. 1995). Contrary to the vessel interests' argument, our review of the record reveals that the district court awarded prejudgment interest on Appellee's future loss of support award

14

only from the date of trial (January 26, 1998) to the date of the judgment (February 27, 1998). The district court did not abuse its discretion in awarding interest to this limited extent on Appellee's award of future loss of support.

E.

Appellee cross-appeals and argues that the district court's award of damages is insufficient to compensate Appellee and that the district court erred in calculating the damages for future loss of support. After carefully reviewing the record, we conclude that the district court's award was not clearly erroneous, and we decline to disturb it. *See Couch,* 44 F.3d at 327.

III.

In sum, we affirm all features of this case except the district court's award of survival damages for Jacobs' pre-death pain and suffering under the general maritime law. We also decline to reinstate the award under the Texas Survival Statute. The judgment of the district court is therefore

AFFIRMED IN PART, REVERSED IN PART and REMANDED for entry of judgment consistent with this opinion.