**UNITED STATES of America**

v.

**Paula GIPSON, Defendant.**

**No. 1:08CR385.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 24, 2010.

John Frank Eisinger, U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

### ORDER

T.S. ELLIS, III, District Judge.

This garnishment proceeding following a criminal conviction requires resolution of a possible conflict between two federal statutes governing restitution collection proceedings. More specifically, at issue is whether the transfer provision of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.* ("FDCPA")—which provides that upon timely motion, a garnishment proceeding "shall be transferred" to the judicial district in which the debtor resides—must yield to the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA")—which vests continuing jurisdiction over restitution proceedings in the sentencing court and may, by implication, prohibit transfer to another judicial district. The government opposed defendant's motion to transfer, and further briefing and argument are dispensed with as they would not aid the decisional process. Accordingly, the matter is now ripe for disposition.

### I.

The debtor, Paula Gipson, is a resident of Glenn Heights, Texas, who is currently incarcerated at the Federal Prison Camp in Bryan, Texas. On February 26, 2009, Gipson pled guilty in this district to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. Thereafter, on September 4, 2009, Gipson was sentenced to fifteen months' imprisonment and three years' supervised release following the prison term. At the time of sentencing, Gipson was also ordered to pay a $100 special assessment and $3,990,232.75 in restitution. On March 10, 2010, the government filed an application seeking garnishment of Gipson's assets pursuant to the restitution judgment and the FDCPA. Specifically, the government requested that the Clerk of this Court issue a writ of garnishment pursuant to the FDCPA and also requested that the Clerk sign a notice of garnishment as required by the FDCPA. The draft notice submitted by the government provided, in pertinent part, as follows:

> If you think you live outside the Federal judicial district in which the court is located, you may also request, not later than 20 days after you receive this Clerk's Notice, that this proceeding to take your property be transferred by the court to the Federal judicial district in which you reside. You must make your request in writing.

The Clerk signed the proposed notice containing this language on the same day, March 10, and returned it to the government to serve upon Gipson. The Clerk also issued a writ of continuing garnishment requiring two garnishees—Capital One and Extra Mile Enterprise, LLC (hereinafter "Extra Mile")—to withhold and retain any property in which Gipson has a substantial nonexempt interest pursuant to the FDCPA. Capital One answered the writ, but Extra Mile did not.

Subsequently, on March 26, 2010, Gipson filed a letter motion, in which she

requests that the proceeding be transferred to the federal judicial district in which she resides. The government, in response, concedes that Gipson's motion for transfer is timely under the FDCPA, but nonetheless opposes transfer on the ground that transferring the case is "inconsistent" with the MVRA and would "curtail or limit the right of the United States" to garnish Gipson's assets under the MVRA, both of which, it argues, cause transfer to be forbidden by a separate provision of the FDCPA, 28 U.S.C. § 3003(b). For the reasons that follow, the FDCPA's transfer provision does not conflict with the MVRA and does not curtail or limit the government's rights under that statute, and thus Gipson's motion for transfer is appropriately granted.

## II.

The analysis properly begins with the FDCPA provisions in issue. Section 3004(b)(2) of the FDCPA provides as follows:

> If the debtor so requests, within 20 days after receiving the notice described in section 3101(d) or 3202(b), the action or proceeding in which the writ, order, or judgment was issued shall be transferred to the district court for the district in which the debtor resides.

Standing alone, the mandatory language of § 3004(b)(2) ("shall be transferred") appears to compel courts to transfer garnishment proceedings to a garnishee's place of residence upon a timely motion.[1] But this does not end the analysis, for the FDCPA also grants district courts plenary authority to "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure" under the statute. 28 U.S.C.

§ 3013. Additionally, the FDCPA provides that

> [t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter.

28 U.S.C. § 3001(b). And, the FDCPA further states that

> [t]his chapter shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law—
>
>  . . .
>
> (2) to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case. . . .

28 U.S.C. § 3003(b). Thus, under the plain language of these provisions, the FDCPA's transfer provision must give way to another federal law (i) to the extent the other law delineates procedures that are "inconsistent" with the FDCPA, and (ii) insofar as the FDCPA would "curtail or limit" a right of the United States to collect criminal restitution arising under that other law.

■ In its opposition to Gipson's motion for transfer, the government contends that notwithstanding the language contained in its notice of garnishment, the FDCPA's transfer provisions do not apply in postconviction restitution collection proceedings such as the instant matter. More specifically, the government argues that the MVRA—enacted in 1996, subsequent to the FDCPA's 1990 enactment—requires postjudgment collection proceedings to occur in the sentencing court, and that transferring proceedings upon timely mo-

---

1. As noted above, there is no dispute that Gipson's motion was filed within twenty days of receiving FDCPA-qualifying notice of garnishment, and thus her motion was timely filed for purposes of § 3004(b)(2).

tion to the judicial district in which the debtor resides is "inconsistent" with the MVRA and would "curtail or limit" the government's right to collect on criminal restitution judgments in the sentencing court itself. In support of its argument, the government cites a single, unpublished opinion from the Western District of Wisconsin, in which the district court held that "[a]llowing transfer of any part of the enforcement proceedings would be inconsistent with the government's and the court's obligation to insure that the defendant complies with his court-ordered obligations" under the MVRA. *United States v. Tedder,* 2004 WL 415270, at *3 (W.D.Wis. Feb. 26, 2004) (Opinion and Order). The government's argument and the rationale of the district court in *Tedder* fail to persuade, as transfer under the FDCPA is not inconsistent with the MVRA and does not curtail or limit a right of the United States under the MVRA.

The gravamen of the MVRA is to require sentencing courts to impose restitution on certain federal criminal offenders. *See generally* 18 U.S.C. § 3663A(a)—(c).[2] The statute further specifies the procedures by which a restitution judgment should be prepared and issued, and also provides some enforcement provisions while leaving other statutes, including the FDCPA, to fill the gaps. *See generally* 18 U.S.C. § 3664(a)—(o) (procedures for issuance and enforcement of restitution order).[3] Importantly, the statute is entirely silent with respect to whether, and in what circumstances, the sentencing court may transfer jurisdiction over a collection proceeding to another judicial district. The government apparently infers from this silence that the MVRA does not allow transfer, and thus the FDCPA's transfer provision is inconsistent with the MVRA and curtails the government's right under the MVRA to collect on a restitution judgment in the sentencing court. This argument is without merit, as the government incorrectly interprets the MVRA's silence as an implicit prohibition of transfer.

▮▮▮ There is no controlling case law on this point, and case law from other jurisdictions is sparse.[4] In these circumstances, principles of implied conflict preemption guide the inquiry into whether the FDCPA's transfer provision is inconsistent with the MVRA. In the preemption context, a state law impermissibly conflicts with a federal statute to the extent that the state law would "prevent or frustrate the accomplishment" of a federal statutory objective. *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 873, 120 S.Ct. 1913, 146

---

**2.** Specifically, the MVRA requires imposition of restitution for offenders convicted of (i) a crime of violence, (ii) an offense against property, or (iii) tampering with consumer products, where an identifiable victim of the offense has suffered physical injury or pecuniary loss. MVRA § 3663A(c).

**3.** Section 3664 also incorporates the provisions of 18 U.S.C. § 3612, which provides procedures for collection of a fine or restitution judgment. Section 3612, like § 3664, says nothing about jurisdictional transfer of a collection proceeding.

**4.** Only three district courts—and no courts of appeal—have decided the question at bar. In addition to *Tedder,* 2004 WL 415270, the aforementioned Western District of Wisconsin case relied on by the government, a district judge in the Southern District of Ohio recently agreed with *Tedder* that the FDCPA's transfer provision is inconsistent with the MVRA and thus denied transfer. *See United States v. Poulsen,* No. 2:06cr129, 2010 WL 1849294, at *5 (S.D.Oh. May 3, 2010). On the other hand, a district judge in the District of Rhode Island rejected *Tedder* and concluded that the FDCPA's transfer provision is *not* inconsistent with the MVRA and, accordingly, the court granted the motion for transfer. *See United States v. Vieira,* Cr. No. 94–21–01, 2009 WL 3678098, at *3 (D.R.I. Nov. 4, 2009).

L.Ed.2d 914 (2000). And, while the Supreme Court, in recent years, has broadly construed the scope of preemptive conflicts under this so-called "obstacle preemption" doctrine,[5] the Court has unfailingly required "identification of an 'actual conflict'" between the competing provisions for the state law to be preempted. *Id.* at 884, 120 S.Ct. 1913 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). The analysis of whether the MVRA is "inconsistent with" the FDCPA's transfer provision should proceed along these same lines, and application of these principles to the instant question demonstrates that there is simply no conflict between the FDCPA's transfer provision and the MVRA.

As noted, the overarching purpose of the MVRA is to enable—and, indeed, to require—sentencing courts to order restitution judgments in a wide array of criminal cases, and to empower the government to enforce those judgments. The FDCPA's transfer provision does not frustrate these statutory objectives, and thus it is not inconsistent with the MVRA. This conclusion follows from two observations.

First, application of well settled principles of statutory interpretation demonstrates that the MVRA's silence regarding the transfer issue should not be interpreted to prohibit transfer or to suggest that allowing transfer under the FDCPA would frustrate the accomplishment of the MVRA's statutory objectives. To the contrary, the only reasonable conclusion is that by not comprehensively prescribing the procedures necessary for the government to enforce a restitution judgment in the MVRA, Congress intended that the FDCPA would operate to fill the procedural gaps left by the MVRA—including transfer procedures. And indeed, courts have long held that Congress presumptively legislates with knowledge of the law in existence at the time, and thus a statute should be interpreted consistently with those prior enactments absent indication to the contrary.[6] Accordingly, it may be reasonably assumed that Congress, in enacting the MVRA in 1996, knew (i) that the FDCPA prescribes the procedures by which the government would seek to collect MVRA-authorized restitution judgments, and (ii) that the FDCPA provides that upon timely motion collection proceed-

**5.** Indeed, according to some, the Supreme Court's obstacle preemption jurisprudence has swept *too* broadly, and the Supreme Court's most recent pronouncement on the scope of implied conflict preemption narrows the scope of so-called "obstacle" preemption somewhat. *See Wyeth v. Levine*, —— U.S. ——, 129 S.Ct. 1187, 1203–04, 173 L.Ed.2d 51 (2009) (holding that state law failure-to-warn product liability claim does not conflict with FDA regulation of prescription drug labels and thus is not preempted); *see also id.* at 1211–12 (Thomas, J., concurring) (criticizing obstacle preemption doctrine as "inherently flawed" and possibly unconstitutional); Caleb Nelson, *Preemption*, 86 Va. L.Rev. 225, 303 (2000) (same).

**6.** *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) ("We assume that Congress is aware of exist-

ing law when it passes legislation."); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law.") (assuming, in enacting Title IX, Congress incorporated settled law concerning existence of implied private right of action under Title VI); *Cf. United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (holding, in a dispute over whether federal Debt Collection Act abrogates common law prejudgment interest rule, that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law") (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978)).

ings "shall be transferred" to the debtor's home judicial district. If Congress believed that the FDCPA's transfer provision would frustrate achievement of the MVRA's objectives, then surely Congress would have prohibited transfer in the MVRA. Instead, the MVRA is silent, and the FDCPA expressly provides for transfer. In these circumstances, the interpretation proposed by the government that the MVRA implicitly overrides the FDCPA's transfer provision is simply implausible.

Second, notwithstanding the "shall be granted" language of § 3004(b)(2), the FDCPA vests courts with discretion to deny transfer where retaining jurisdiction would best effectuate the objectives of the MVRA. Specifically, the FDCPA's grant of plenary authority to district courts to "deny[ ], limit[ ], condition[ ], regulat[e], extend[ ], or modify[ ] the use of any enforcement procedure" clearly allows a court to deny a timely transfer motion for good cause, and good cause to deny transfer ordinarily would exist where transfer is requested merely to delay or frustrate efforts to collect on restitution judgments. Accordingly, the FDCPA's transfer provision merely operates to shift the burden from the party requesting transfer—on whom the burden ordinarily rests in civil and criminal matters—[7] to the party opposing transfer where, as here, the requirements of § 3004(b)(2) are met. And, there is no basis to conclude that the FDCPA's transfer framework—thus properly understood—is "inconsistent" with the MVRA, for sentencing courts may and should deny transfer when granting the motion to transfer would be inconsistent with the objectives of the MVRA.

For essentially the same reasons, § 3004(b)(2) does not impermissibly "curtail or limit" any right of the United States. The MVRA vests the Attorney General with authority to collect on a restitution judgment. 18 U.S.C. § 3664(k). It does not, however, vest the government with absolute authority to proceed in the sentencing court despite a timely motion to transfer under the FDCPA, and despite the government's failure to show good cause to deny the transfer request. In short, the FDCPA's transfer provision does not operate to curtail or limit any right of the government under the MVRA or any other provision of federal law.

In sum, a debtor is ordinarily entitled to transfer of an FDCPA collection proceeding to the debtor's district of residence upon a timely motion under § 3004(b)(2). Nonetheless, a district court may, for good cause, deny the motion to transfer, and transfer typically should be denied where the fact-specific circumstances of the collection proceeding show that granting the request would frustrate the government's efforts to collect on an MVRA restitution judgment. So construed, the FDCPA's transfer provision is not inconsistent with the MVRA, and the provision does not curtail or limit any right of the United States to collect under the FDCPA.

## III.

■ As there is no dispute that Gipson's motion to transfer is timely under § 3004(b)(2), the only question that remains is whether the government has shown good cause to deny the motion. In this regard, the government argues that the restitution judgment in issue here raises interpretive questions that ought to be resolved by the sentencing court. Namely, the government notes that Gipson contends that the payment schedule imposed at the time of sentencing "preclude[s] enforcement prior to the effective date of the

---

7. *See* 28 U.S.C. § 1404; Rule 21, Fed. R.Crim.P.

payment plan." Gov't Br. at 7. The government suggests that the restitution judgment is ambiguous in this respect, and that "a proper understanding of the Court's intent lies with this Court, and not one of the United States District Courts in Texas." *Id.* at 8. This argument fails, as the plain language of the restitution judgment is entirely unambiguous on this point.

Despite the government's effort to create ambiguity in the restitution judgment and thus demonstrate the need to continue the collection proceedings here, the restitution judgment is clear that the government may commence FDCPA collection proceedings while Gipson is incarcerated. Specifically, the restitution judgment provides that "[r]estitution is due immediately, and notwithstanding any other provision of this Restitution Judgment, the Government may enforce restitution at any time." *United States v. Gipson*, No. 1:08cr385 (Sept. 4, 2009) (Restitution Judgment), There is no room for confusion in these terms: the payment schedule contained in the restitution judgment in no way limits the government's ability to enforce the restitution judgment under the FDCPA. Gipson's assertion of a baseless legal argument to the contrary does not, without more, create good cause to deny her request to transfer this proceeding. Accordingly, the motion is properly granted.

### IV.

Accordingly, and for good cause,

It is hereby **ORDERED** that defendant Paula Gipson's motion to transfer the collection proceeding in this case to the Northern District of Texas is **GRANTED.** Accordingly, this matter is **TRANS-FERRED** to the District Court for the Northern District of Texas.

The Clerk is directed to send a copy of this Order to all counsel of record.