**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.22-16128 |
| *Plaintiff-Appellee*, | D.C. No. 2:21-mc-00098-TLN-AC |
| v. | |
| MICHAEL BRUMBAUGH, Successor Trustee of The Castana Trust, Dated March 4, 2009, and Administrator of the Estate of David Zinnel, | OPINION |
| *Claimant-Appellee*, | |
| STEVEN ZINNEL, | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Submitted May 14, 2025[*]
San Francisco, California

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed June 9, 2025

Before:  Carlos T. Bea and Ana de Alba, Circuit Judges,
and Jeffrey Vincent Brown,[**] District Judge.

Opinion by Judge de Alba

## SUMMARY[***]

### Federal Debt Collection Procedures Act of 1990

The panel vacated the district court's final order of garnishment in the government's application for a writ of garnishment under the Federal Debt Collection Procedures Act of 1990 (FDCPA), seeking to seize funds from a TD Ameritrade Clearing, Inc., Individual Retirement Account that petitioner Steven Zinnel owned.

A jury convicted Zinnel of bankruptcy fraud, money laundering, and other financial crimes. The district court overruled Zinnel's objections to the writ of garnishment, and ordered TD Ameritrade to pay the district court clerk for unpaid restitution and unpaid fines, and pay the U.S. Department of Justice $150,000 as a litigation surcharge.

The panel held that the appeal was not moot even though TD Ameritrade made all payments required by the final

---

[**] The Honorable Jeffrey Vincent Brown, United States District Judge for the Southern District of Texas, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

garnishment order. Assuming Zinnel prevails on appeal and on remand in the district court, the district court could vacate the portion of the garnishment order requiring TD Ameritrade to disburse $650,000 for the unpaid fines and the litigation surcharge and direct the United States to return the funds to TD Ameritrade. That it may be impossible for Zinnel to recover the $512,047 the district court clerk paid to Zinnel's victims did not affect the analysis. Because the court may fashion a partial remedy here, the appeal is not moot.

The panel held that the district court erred in denying Zinnel's timely motion to transfer the garnishment proceedings to the district in which he purportedly resided. Agreeing with the Sixth and Eleventh Circuits, the panel held that the plain language of section 3004 of the FDCPA imposed a mandatory obligation on the district court to transfer the proceedings.

The panel held that the proper remedy was to vacate the final garnishment order. Disagreeing with the Sixth Circuit, the panel held that the Supreme Court's opinion in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), foreclosed the contention that a district court's violation of § 3004(b)(2) was amenable to harmless error analysis; rather, it was the type of violation that necessarily affected the debtor's "substantial rights." 28 U.S.C. § 2111.

**COUNSEL**

Lynn T. Ernce, Assistant United States Attorney; Philip A. Talbert, United States Attorney; United States Department of Justice, Office of the United States Attorney, Sacramento, California; Robin Tubesing, Assistant United States Attorney, United States Department of Justice, Office of the United States Attorney, Fresno, California; for Plaintiff-Appellee.

Kenneth G. Peterson, Boutin Jones Inc., Sacramento, California, for Claimant-Appellee.

Steven Zinnel, Pro Se, Aliso Viejo, California, for Defendant-Appellant.

---

**OPINION**

DE ALBA, Circuit Judge:

The Federal Debt Collection Procedures Act of 1990 (FDCPA) states that a proceeding initiated by the United States to recover a debt "shall," upon the debtor's timely request, "be transferred to the district court for the district in which the debtor resides." 28 U.S.C. § 3004(b)(2). Notwithstanding this mandatory directive, courts disagree on whether a district court has discretion to deny the debtor's transfer request. *Compare United States v. Peters*, 783 F.3d 1361, 1364 (11th Cir. 2015), *with United States v. Mathews*, 793 F. Supp. 2d 72, 75–76 (D.D.C. 2011). We join those courts that have followed the statute's plain language and hold that a district court has a mandatory duty to transfer an FDCPA proceeding upon the debtor's timely request. We further hold that a district court's failure to transfer the

proceeding is not reviewed for harmless error; if the debtor has preserved his or her objection to venue, the proper remedy is to vacate the final order and permit the debtor to litigate the proceeding in his or her district of residence, as Congress intended. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 42–43 (1998).

## I.  Background

A jury convicted Petitioner Steven Zinnel of bankruptcy fraud, 18 U.S.C. § 152, money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and other financial crimes in the United States District Court for the Eastern District of California. The district court sentenced Zinnel to a total term of 152 months' imprisonment, ordered Zinnel to pay $2,513,319 in restitution, $500,000 in fines, and a $1,500 special assessment, and ordered Zinnel to forfeit to the United States both his interest in various real property and businesses, and a "personal" money judgment "in the amount of $1,297,158.20."

Following the judgment, the government filed in the Eastern District of California an application for a writ of garnishment under the FDCPA, seeking to seize funds from a TD Ameritrade Clearing, Inc., Individual Retirement Account that Zinnel owned. The government sought both to obtain funds to satisfy Zinnel's unpaid restitution and fines and to recover a percentage of the unpaid penalties as a litigation surcharge under 28 U.S.C. § 3011.

About a week after receiving notice of the proceedings, Zinnel filed an objection and request for an evidentiary hearing, contending that he had already satisfied all payments the judgment required. Zinnel also filed a motion to transfer the proceedings to the United States District Court for the District of Oregon—the district where he purportedly

resided at the time. The district court denied the motion. Applying 28 U.S.C. § 1391, the court ruled that venue was proper in the Eastern District of California because Zinnel was convicted and sentenced there and because "the property at issue" was located there. The court did not address § 3004(b)(2).

The district court ultimately overruled Zinnel's objections to the writ of garnishment and ordered TD Ameritrade to (1) pay the district court clerk $512,047 for unpaid restitution and $500,000 for unpaid fines; and (2) pay the United States Department of Justice $150,000 as a litigation surcharge. Zinnel timely appealed from the final garnishment order.[1]

## II.  The Appeal is Not Moot

As an initial matter, the government contends that Zinnel's appeal is moot. Zinnel did not obtain a stay of the final garnishment order pending his appeal. Therefore, TD Ameritrade disbursed the required $1,012,047 to the district court clerk, and the clerk subsequently distributed $512,047 to Zinnel's victims and $500,000 to the Department of Justice's Crime Victims Fund. TD Ameritrade also disbursed the required $150,000 to the Department of Justice for the litigation surcharge. Because TD Ameritrade has made all payments required by the final garnishment order, the government contends the appeal from the order is now moot.

"'A case is moot on appeal if no live controversy remains at the time the court of appeals hears the case,' such that no

---

[1] We have jurisdiction to review the final garnishment order under 28 U.S.C. § 1291. *United States v. Swenson*, 971 F.3d 977, 981–82 (9th Cir. 2020).

'appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor.'" *Donovan v. Vance*, 70 F.4th 1167, 1171 (9th Cir. 2023) (quoting *NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007)). "Mootness is a question of law" we consider de novo. *ASW v. Oregon*, 424 F.3d 970, 973 (9th Cir. 2005).

Zinnel's appeal is not moot. The United States, a party to this proceeding, has retained $650,000 of the money that TD Ameritrade disbursed from Zinnel's account. Assuming Zinnel prevails on appeal and on remand in the district court, the district court could vacate the portion of the garnishment order requiring TD Ameritrade to disburse $650,000 for the unpaid fines and the litigation surcharge and direct the United States to return the funds to TD Ameritrade. *See United States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir. 1990) (explaining that courts have equitable power to order the government to return unlawfully obtained property where there are no criminal proceedings pending against injured party).

That it may be impossible for Zinnel to recover the $512,047 the district-court clerk paid to Zinnel's victims does not affect our analysis. A case is not moot simply because the court cannot "return the parties to the *status quo ante*"; all that is required is that the court "can fashion *some* form of meaningful relief . . . ." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Because the court may fashion a partial remedy here, the appeal is not moot. *See United States v. Jacobo Castillo*, 496 F.3d 947, 956 (9th Cir. 2007) ("[T]he availability of even a partial remedy is sufficient to prevent a case from being moot" (internal quotation marks and citation omitted)).

### III. Motion to Transfer

### A. The District Court Erred in Denying Zinnel's Motion to Transfer

The FDCPA "provides the exclusive civil procedures for the United States to . . . recover a judgment on a debt," in the absence of conflicting federal law. *United States v. Gianelli*, 543 F.3d 1178, 1182 (9th Cir. 2008) (omission in original) (quoting 28 U.S.C. § 3001). Section 3004(b)(1) provides that "[e]xcept as provided in paragraph (2)," a writ of garnishment or other process filed under the FDCPA "may be served in any State" and "may be enforced by the court issuing the writ, order, or process, regardless of where the person is served . . . ." Paragraph (2), in turn, provides:

> If the debtor so requests, within 20 days after receiving the [required] notice . . . , the action or proceeding in which the writ, order, or judgment was issued shall be transferred to the district court for the district in which the debtor resides.

28 U.S.C. § 3004(b)(2).

The parties do not dispute that Zinnel timely requested the district court transfer the garnishment proceedings to the district in which he purportedly resided. The question is whether, notwithstanding the timely request, the district court had discretion to deny it.

Courts have reached different conclusions on this issue. The Sixth and Eleventh Circuits have held that the "plain language" of § 3004 imposes a mandatory obligation on the district court to transfer the proceedings. *Peters*, 783 F.3d at 1364 (11th Cir. 2015); *United States v. Nash*, 175 F.3d 440,

442 (6th Cir. 1999). On the other hand, several district courts have ruled that, notwithstanding the statute's use of the word "shall," the court retains discretion to deny the motion under some circumstances. *See*, *e.g.*, *United States v. Poulsen*, No. 2:06-CR-129-ALM-1, 2010 WL 1849294, at *4–5 (S.D. Oh. May 3, 2010); *Mathews*, 793 F. Supp. 2d at 75–76.

We agree with our colleagues on the Sixth and Eleventh Circuits. The Supreme Court has advised that a statute's use of the term "'shall' . . . normally creates an obligation impervious to judicial discretion." *Lexecon*, 523 U.S. at 35; *see Maine Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement" (quoting *Kingdomware Techs., Inc. v. United State*s, 579 U.S. 162, 171 (2016))); *Murphy v. Smith*, 583 U.S. 220, 224 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty, . . . tell[ing] us that the district court has some nondiscretionary duty to perform.").

Moreover, "[w]hen a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Kingdomware*, 579 U.S. at 172. Section 3004 distinguishes between "may" and "shall" several times. Subsection (a) states that any "complaint, notice, writ, or other process" served "in an action or proceeding under [the FDCPA] *shall* be served in accordance with the Federal Rules of Civil Procedure unless otherwise provided . . . ." 28 U.S.C. § 3004(a) (emphasis added). As discussed, subsection (b)(1) states that any writ or other proceeding "*may* be served in any State" and "*may* be enforced by the court issuing the writ, order, or process, regardless of where the person is served . . . ." *Id.* § 3004(b)(1) (emphases added). And subsection (c) states, "counsel for the United

States *shall* exercise reasonable diligence" to serve the debtor with the required notice. *Id*. § 3004(c) (emphasis added). Other provisions of the FDCPA also distinguish between "may" and "shall" when describing the district court's authority. *See*, *e.g.*, *id.* §§ 3007(a)(court "shall order a commercially reasonable sale" of any seized or detained personal property that "the court determines . . . is likely to perish, waste, or be destroyed, or otherwise substantially depreciate"); 3205(c)(1) (court "shall issue an appropriate writ of garnishment" if the requirements of the statute are satisfied); 3008 (court "may assign its duties in [FDCPA] proceedings . . . to a United States magistrate judge"); 3014(b) (court "may," where debtor seeks to exempt property from the proceedings, "order the debtor to file a statement with regard to any claimed exemption," but "shall determine the extent (if any) to which the exemption applies"); 3201 (court "may order the United States to sell, . . . any real property subject to a judgment lien"); 3202 (court "may issue other writs . . . as necessary to support" remedies provided under the FDCPA); 3204(a) (court "may, if appropriate, order that the judgment debtor make specified installment payments to the United States," but "shall take into consideration . . . the income, resources, and reasonable requirements" of the debtor and his or her dependents).

The FDCPA repeatedly distinguishes between what the court "shall" do and what the court "may" do. Therefore, "[w]e see no reason to depart from the usual inference" that Congress, by using the word "shall" in § 3004(b)(2), deliberately chose to impose a mandatory duty on the district court to grant a debtor's timely request to transfer the proceedings. *Kingdomware*, 579 U.S. at 172.

The district courts that reached the opposite conclusion generally followed one of two approaches. First, some

courts ruled that the FDCPA does not limit a court's authority to enforce a restitution order issued under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. *See, e.g.*, *United States v. Amlee*, No: PE:06-CR-00172-RAJ, 2010 WL 11629156, at *3 (W.D. Tex. June 21, 2010); *Poulsen*, 2010 WL 1849294, at *4–5; *United States v. Jeburk*, No. CR 195-058, 2008 WL 4499982, at *1 (S.D. Ga. Oct. 6, 2008). As the district court in *Jeburk* explained, the MVRA "set[s] out procedures for the collection of unpaid fines and restitution imposed as part of a criminal judgment" and "give[s] sentencing courts continuing jurisdiction over defendants they have sentenced . . . ." 2008 WL 4499982, at *1.

Section 3001(b) of the FDCPA states: "To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply . . . to the extent those procedures are inconsistent with [the FDCPA]." 28 U.S.C. § 3001(b). Section 3003(b)(2) similarly states that the FDCPA "shall not be construed to curtail or limit the right of the United States under any other Federal law" to "collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case . . . ." *Id.* § 3003(b)(2). The aforementioned courts have reasoned that permitting a debtor to transfer a proceeding to enforce a restitution order would be inconsistent with Congress's intent that the sentencing court should "insure" or "supervise" the defendant's compliance with the judgment and, therefore, § 3004(b)(2) does not apply to such proceedings. *See, e.g., Poulsen*, 2010 WL 1849294, at *4; *Jeburk*, 2008 WL 4499982, at *1.

We respectfully disagree.  An order of restitution under the MVRA[2] is "enforced in accordance with section 3664" of Title 18, which governs the enforcement of restitution orders generally.  18 U.S.C § 3663A(d); *see id.* § 3664. Section 3664, in turn, provides that "[a]n order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of [Title 18]; or (ii) by all other available and reasonable means."  *Id.* § 3664(m)(1)(A).

But several of the enforcement remedies available under the FDCPA, including a writ of garnishment, are not specifically authorized by the MVRA or in Subchapter B of Chapter 229.  *See* 28 U.S.C. §§ 3203(c) (writ of execution), 3203(e) (appointment of receiver), 3205 (writ of garnishment).[3]  The MVRA also does not include any provisions that govern the transfer of enforcement proceedings to another district, nor state that the sentencing

---

[2] The MVRA "is one of several federal statutes that govern federal court orders requiring defendants convicted of certain crimes to pay their victims restitution." *Lagos v. United States*, 584 U.S. 577, 580 (2018). It applies where the defendant is convicted of, among other crimes, "offense[s] against property . . . , including any offense committed by fraud or deceit." *Id.* (omission in original) (quoting 18 U.S.C. § 3663A(c)(1)(A)).  We assume, without deciding, that the MVRA applies here.

[3] Subchapter B of chapter 229 specifies some actions the court may take where a defendant fails to pay an order of restitution, for example, revoking or modifying the terms of a defendant's probation or supervised release, holding the defendant in contempt of court, or ordering the sale of the defendant's property. 18 U.S.C. § 3613A(a)(1).  Subchapter C of subchapter 227 primarily governs the court's imposition of a fine, *see* 18 U.S.C. §§ 3571–73, and specifically states that "[t]he implementation of a sentence to pay a fine is governed by the provisions of subchapter B of chapter 229," *id.* § 3574.

court retains jurisdiction to enforce proceedings irrespective of conflicting venue provisions. And 18 U.S.C § 3613(a)— a provision of Chapter 229, subchapter B that the MVRA added, *see* MVRA, Pub. L. No. 104-132, § 207(c)(3), 110 Stat. 1227, 1238—generally provides that the United States may enforce a restitution order "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." Therefore, the FDCPA's requirement that the district court transfer proceedings to the debtor's district of residence is not "inconsistent" with the MVRA, 28 U.S.C. § 3001(b), and does not "curtail or limit" the right of the United States to collect restitution under the MVRA, *id.* § 3003(b). Nor would transferring FDCA proceedings frustrate the sentencing court's duty to ensure compliance with the restitution order. The court could, for example, order the parties to provide updates following a transfer of a particular debt collection proceeding. *See* 18 U.S.C. § 3613A(a)(1) (providing that district court may take such actions as "necessary to obtain compliance with the order of a fine or restitution").

Moreover, the MVRA specifically lists one provision of the FDCPA that does "not apply" to proceedings to enforce restitution orders: 28 U.S.C. § 3014, which exempts certain property from collection proceedings under the FDCPA. 18 U.S.C. § 3613(a)(2). Congress's decision to list one, and only one, provision of the FDCPA that does not apply to enforcement proceedings under the MVRA is strong evidence Congress intended all other provisions to apply. *See Tang v. Reno,* 77 F.3d 1194, 1197 (9th Cir. 1996) ("[A]n item which is omitted from a list of exclusions is presumed not to be excluded" (alteration in original)

(quoting *Qi–Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995))).

A second set of district courts have focused on § 3013 of the FDCPA in ruling that district courts sometimes have discretion to deny a debtor's motion to transfer. *See*, *e.g.*, *United States v. Schoenfeld*, No. 2:21-mc-0095 KJM DB, 2021 WL 4503586, at *2–4 (E.D. Cal. Oct. 1, 2021); *Mathews*, 793 F. Supp. 2d at 75–76; *United States v. Gipson*, 714 F. Supp. 2d 571, 573–76 (E.D. Va. 2010). Section 3013 states that a district court may "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under [the FDCPA]." 28 U.S.C. § 3013. These courts have concluded that, when read together, §§ 3004(b)(2) and 3013 "merely operate[] to shift the burden from the party requesting transfer . . . to the party opposing transfer" but permit the district court to deny the transfer for good cause. *Mathews*, 793 F. Supp. 2d at 75 (quoting *Gipson,* 714 F. Supp. 2d at 576).

We are not convinced by these district courts either. They overlook the "well established canon of statutory interpretation . . . 'that the specific governs the general,'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992)), which applies especially where, as here, "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," *id.* (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).

Section 3013 provides the more general grant of authority to a district court: to modify the use of the FDCPA's enforcement procedures, with little indication of

how it may do so. Section 3004(b)(2), by contrast, places a specific restriction on the court: to refrain from hearing the case and transfer the proceeding at the debtor's request. In our opinion, the better reading of § 3013 is that the court may generally modify the use of the FDCPA's enforcement proceedings, *except* where a provision like § 3004(b)(2) specifically limits the court's discretion. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("[A] statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere."). Permitting a district court to deny a debtor's transfer request for good cause would effectively nullify the protection established in § 3004(b)(2). *See California Trout, Inc. v. FERC*, 313 F.3d 1131, 1137 (9th Cir. 2002) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one" (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974))). Therefore, we hold that the district court had a mandatory obligation to transfer the proceedings and erred in declining to do so.

## B. The Proper Remedy Is to Vacate the Final Garnishment Order

The government contends any error in declining to transfer the proceedings was harmless because Zinnel's objections to the writ of garnishment remain meritless if asserted in the District of Oregon. We disagree.

After holding that § 3004(b)(2) imposed a mandatory obligation on the district court to transfer the proceedings, the Sixth and Eleventh Circuits in *Nash* and *Peters*, reached different conclusions regarding the proper remedy. In *Nash,* the Sixth Circuit held that the court's error was harmless because "the substantive outcome would have been the same even if the transfer of venue had been granted." 175 F.3d at

444. In *Peters*, the Eleventh Circuit vacated the district court's order granting a writ of execution, without conducting a harmless error analysis. 783 F.3d at 1364.

On this point, we respectfully disagree with our colleagues on the Sixth Circuit. The Supreme Court's opinion in *Lexecon* forecloses the contention that a district court's violation of § 3004(b)(2) is amenable to a harmless-error analysis; rather, it is the type of violation that necessarily affects the debtor's "substantial rights." 28 U.S.C. § 2111.

In *Lexecon*, the Court considered 28 U.S.C. § 1407(a), which "authorizes the Judicial Panel on Multidistrict Litigation [JPML] to transfer civil actions with common issues of fact 'to any district for coordinated or consolidated pretrial proceedings,' . . . ." 523 U.S. at 28 (quoting 28 U.S.C. § 1407(a)). Section 1407 also states that "[e]ach action so transferred *shall* be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . ." 28 U.S.C. § 1407(a) (emphasis added).

The Ninth Circuit held that the transferee court had authority to self-assign the case upon completion of pretrial proceedings. *Lexecon*, 523 U.S. at 32. The Supreme Court reversed. The Court first held that the statute's use of the term "shall" created an "unconditional command" to remand to the original district upon conclusion of pretrial proceedings in the transferee court. *Id.* at 35–37. Like the government here, the respondent argued that district court's error in declining to remand was nonetheless harmless because "none of [the appellants'] substantial rights was prejudicially affected . . . ." *Id.* at 41.

The Court rejected the argument.  It reasoned that the "the substantiality of the [plaintiff's] protected interest" in transferring the case back to his or her chosen district was "attested by a congressional judgment that in the circumstances described in the statute no discretion is to be left to a court faced with an objection . . . ." *Id*. at 42.  The Court further explained that "[t]he § 1407(a) mandate would lose all meaning if a party who continuously objected to an uncorrected categorical violation of the mandate could obtain no relief at the end of the day." *Id.* at 43.  The Court held the proper remedy, therefore, was to vacate the judgment.

So too here.  For purposes of the substantial rights analysis, there is no meaningful difference between 28 U.S.C. §§ 1407 and 3004(b)(2).  The "strict [transfer] requirement" of § 3004(b)(2) "suffice[s] to establish the substantial significance of any denial of the [debtor]'s right to a [transfer] . . . ." *Lexecon*, 523 U.S at 42.  The mandate would also "lose all meaning" if a debtor who timely requested a transfer could obtain no meaningful relief after the district court denied the request. *Id.* at 43.

We also find relevant that circuit courts have generally held that, when venue is improper in a district court under other statutes, the proper remedy is to reverse rather than review for harmless error. *See In re HTC Corp.* 889 F.3d 1349, 1353 (Fed. Cir. 2018) ("[If] the improper-venue objection was not waived, the appellants will be entitled to assert it on appeal and, if the objection is sustained, obtain from the appeals court an order vacating the judgment . . . and directing the remand of the action to the appropriate venue" (cleaned up)); *SEC v. Johnson*, 650 F.3d 710, 716 (D.C. Cir. 2011) (rejecting appellee's argument that improper venue was amenable to harmless-error analysis,

"even after a jury trial"); *U.S. ex rel. Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co.*, 573 F.2d 245, 247-48 (5th Cir. 1978) ("To embark upon the search for 'harmless error' would be to disregard the unambiguous Congressional mandate that Miller Act suits be brought in the district in which the contract was to be performed 'and not elsewhere.'"); *see also Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."). In short, because the district court was "bound by a venue statute" that "categorically limit[ed] [its] authority" to override Zinnel's chosen venue, its denial of Zinnel's transfer request is not reviewed for harmless error. *Lexecon*, 523 U.S at 42. We therefore vacate the final order of garnishment.[4]

**VACATED AND REMANDED.**

---

[4] The government contends, in the alternative, that Zinnel's appeal is also moot because Zinnel now resides in the Central District of California and is therefore no longer entitled to transfer the proceedings to the District of Oregon. Not so. Because Zinnel has preserved his objection to venue, on remand the district court may reconsider a transfer request to the district in which Zinnel now resides.